UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARI KISHORE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>TIMES INTERNET (UK) LTD.,<br><br>    Defendant. | Case No. 23-cv-03594-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND GRANTING PLAINTIFFS' REQUEST FOR JURISDICTIONAL DISCOVERY**<br><br>Re: Dkt. No. 25 |

Pending before the Court is Defendant Times Internet (UK) Ltd.'s motion to dismiss. Dkt. No. 25. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss without prejudice, and **GRANTS** Plaintiffs' request for jurisdictional discovery.

### I.  BACKGROUND

Plaintiffs Hari Kishore and Brett Walker initially filed this putative class action in July 2023. Dkt. No. 1. In their amended complaint, Plaintiffs allege that Defendant disclosed information about Plaintiffs' and putative class members' personal video-viewing habits without their consent. *See* Dkt. No. 10 ("FAC"). Defendant operates "Willow TV," a streaming video service that offers a catalog of prerecorded cricket matches to its subscribers. *See id.* at ¶¶ 8, 27–30. Subscribers pay $9.99 a month for access to the Willow TV library of prerecorded videos. *Id.* at ¶¶ 6–7, 27–29.

Plaintiffs allege that Defendant used the Meta Pixel, a piece of software code, on the Willow TV website to track and collect subscribers' data for targeted advertising. *Id.* at ¶¶ 4, 15–26, 34, 37. The Pixel, in turn, also sent subscriber data to third-party Meta Platforms Inc., which

offers websites free use of the Pixel in exchange for this data. *See id.* at ¶¶ 16–18, 34–36. Specifically, Plaintiffs allege that the Pixel sent Meta the URL and the full title of the videos that subscribers watched. *See id.* at ¶¶ 5, 31–36, 40, 59. Plaintiffs allege that Meta then could match this data to specific Facebook and Instagram accounts for targeted advertising by using cookies. *See id.* at ¶¶ 20–25, 38–39. Plaintiffs allege that such conduct violates the Video Privacy Protection Act ("VPPA") and California's Unfair Competition Law ("UCL"), as well as Defendant's own assurances that "[w]e do not provide any personally identifiable information to third party websites . . . without your consent." *Id.* at ¶¶ 4–5, 55–80.

Defendant has moved to dismiss the amended complaint in its entirety under Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Dkt. No. 25.

## II. DISCUSSION

In its motion to dismiss, Defendant argues that (1) Plaintiffs do not have Article III standing to bring their claims; and (2) the Court lacks personal jurisdiction over Defendant. *See* Dkt. No. 25 at 5–9, 17–18. Even setting aside these threshold issues, Defendant further contends that Plaintiffs' VPPA and UCL claims should be dismissed. *Id.* at 9–19.

### A. Article III Standing

Defendant urges that Plaintiffs lack Article III standing because they have not suffered an injury in fact. *See* Dkt. No. 25 at 5, 17–18; Dkt. No. 32 at 6, n.5.

#### i. Legal Standard

Article III of the Constitution limits the jurisdiction of the federal courts to actual "cases" and "controversies." U.S. Const. art. III, § 2. One element of this case-or-controversy requirement is that the plaintiff must have standing to bring a claim. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016). To establish standing, a "[p]laintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 338 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

To establish injury in fact, a plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or

hypothetical." *Lujan*, 504 U.S. at 560 (quotations omitted). A mere "procedural violation" of a statute does not give a plaintiff standing to sue. Rather, he must show that the violation caused actual harm. *Id.* at 342; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("[A]n injury in law is not an injury in fact."). "As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *See TransUnion*, 594 U.S. at 430. The elements of standing "must be supported at each stage of litigation in the same manner as any other essential element of the case," so at the motion to dismiss stage the plaintiff must only plausibly allege these elements. *Lujan*, 504 U.S. at 560–61.

### ii. Analysis

Defendant first argues that Plaintiff Kishore does not have standing to bring his claims because he was not personally affected by the Meta Pixel. *See* Dkt. No. 25 at 5. Defendant asserts that the Pixel was only ever active on Willow TV's web platform, and Plaintiff Kishore only ever watched videos on Willow TV's mobile application. *See id.* In support of these contentions, Defendant offers a declaration from Todd Myers, Willow TV's Chief Operating Officer. *See* Dkt. No. 25-1 ("Myers Decl.") at ¶¶ 4, 9. Mr. Myers' declaration states:

- "The Pixel was active only on the Willow TV *web platform* (i.e., only when willow.tv was accessed via an internet browser). It was not active on other Willow TV platforms such as the television application or the smartphone application." *See* Myers Decl. at ¶ 4 (emphasis in original).
- "Willow TV's records show that Mr. Kishore did not watch any prerecorded video content on the web platform, only via the app." *See id.* at ¶ 9.

Defendant's standing argument as to Plaintiff Kishore is highly fact-specific. Ordinarily, when, as here, "the defendant raises a factual attack, the plaintiff must support [his] jurisdictional allegations with competent proof under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (internal quotations and citations omitted). However, "a court must leave the resolution of material factual issues to the trier of fact when the issue of subject-matter jurisdiction is intertwined with an element of the merits of the plaintiff's claim." *Id.* at 1121–22, & n.3; *see also Edison v. U.S.*, 822 F.3d 510, 517

3

(9th Cir. 2016) ("Any factual disputes . . . must be resolved in favor of Plaintiffs" at this stage.). The issues are intertwined when "the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (quotations omitted).

Here, Defendant's subject matter jurisdiction argument is intertwined with the merits of the claims. Its argument turns on details about Defendant's use of the Pixel—a key factual issue in this case. Defendant, at bottom, asserts that despite Plaintiffs' allegations, Mr. Kishore was not affected by the Pixel and his privacy rights were not invaded in violation of the VPPA. Mr. Myers' declaration is conclusory, offering no detail supporting his contentions about the use of the Pixel or Mr. Kishore's exposure to it. *See* Myers Decl. at ¶ 9. Rather than offering such detail, he just broadly states that he is familiar with Willow TV's "operations" and "records." *See id.* at ¶¶ 1–2. Moreover, despite Defendant's suggestion that Plaintiffs "would be in the best position to present evidence to contradict" these contentions, Dkt. No. 32 at 6, this is simply not true. Plaintiffs do not yet have access to specific information about how—or on which platforms— Defendant used the Pixel. The Court declines the invitation to decide a factual dispute at the heart of Plaintiffs' case, particularly on the *ipse dixit* of one of Defendant's executives. At this stage, the Court resolves this factual dispute in Plaintiffs' favor, and finds that the FAC sufficiently alleges that Plaintiff Kishore—as a past subscriber who watched prerecorded videos on Willow— had his personally identified information ("PII") shared with Meta by the Pixel. *See* FAC at ¶¶ 41, 59–62.

Defendant also suggests that even assuming it disclosed Plaintiffs' PII, Plaintiffs have failed to allege that they were injured as a result.[1] *See* Dkt. No. 25 at 17–18. The Court is not

---

[1] In its reply brief, Defendant attempts to "clarify" that it believes both Plaintiffs fail to allege Article III standing *and* statutory standing under the UCL. *See* Dkt. No. 32 at 6, n.5. This purported "clarification" relies on an inappropriately broad reading of Defendant's arguments in the motion to dismiss. In its opening motion, Defendant's standing argument as to Plaintiff Walker appears entirely premised on the statutory standing requirements under the UCL. *See* Dkt. No. 25 at 17–18. Though Article III and statutory standing are related, they are not interchangeable. The UCL has additional standing requirements that require plaintiffs to (1) plead an economic injury and (2) show that the injury was caused by the challenged conduct. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (Cal. 2011). Still, for the sake of completeness the Court considers whether Plaintiffs sufficiently alleged that they suffered an

4

1  persuaded.  As an initial matter, Defendant's authorities only address whether the disclosure of PII
2  constitutes "loss of money or property" for purposes of UCL statutory standing, and not whether it
3  constitutes an injury in fact for purposes of Article III.  Putting that aside, Plaintiffs have
4  nevertheless alleged that "they paid more for Defendant's services than they otherwise would have
5  had they known Defendant was disclosing [their] video viewing information to unauthorized third
6  parties."  *See* FAC at ¶ 75.  Paying such a price premium meets the standing requirements under
7  both Article III and the UCL.  *See, e.g.*, *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 983–84 (9th
8  Cir. 2017) (finding Article III standing in VPPA case, noting "privacy torts do not always require
9  additional consequences to be actionable"); *In re Facebook, Inc., Consumer Priv. User Profile
10 Litig.*, 402 F. Supp. 3d 767, 784–85 (N.D. Cal. 2019) ("[C]ourts have often held that this particular
11 type of intangible injury – disclosure of sensitive private information, even without further
12 consequence – gives rise to Article III standing.") (collecting cases); *In re Vizio, Inc., Consumer
13 Priv. Litig.*, 238 F. Supp. 3d 1204, 1219 (C.D. Cal. 2017) (finding "price premium theory is
14 cognizable under California's UCL") (citing *Kwikset*, 51 Cal. 4th at 317).
15   Defendant responds that Plaintiff Walker's alleged injury—that he paid a premium—is not
16 plausible because he continues to subscribe to Willow TV, even though he now knows about the
17 alleged disclosure of his PII.  *See* Dkt. No. 25 at 25; Dkt. No. 32 at 10–11.  Defendant's argument
18 appears in tension with its own acknowledgment that it no longer uses the Pixel.  *See* Myers Decl.
19 at ¶ 4.  But at bottom, Defendant simply disagrees that Plaintiffs suffered any injury, and it is not
20 the Court's role to weigh credibility on a motion to dismiss.  The Court therefore **DENIES** the
21 motion to dismiss on this basis.
22  **B.  Personal Jurisdiction**
23   Defendant also moves to dismiss the complaint based on lack of personal jurisdiction.  *See*
24 Dkt. No. 25 at 5–9.
25  **i.  Legal Standard**
26   "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears

---

28 injury in fact for purposes of Article III.

5

the burden of demonstrating that the court has jurisdiction over the defendant." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). At the motion to dismiss stage, "the plaintiff need only make a prima facie showing of jurisdictional facts" that "if true would support jurisdiction over the defendant." *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). "Although the plaintiff cannot simply rest on the bare allegations of [his] complaint, uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (quotations omitted). The Court must also resolve any conflicts in the evidence in the plaintiff's favor. *Id.*

Where no federal statute governs personal jurisdiction, the Court applies the law of the state in which it sits—here, California. *See id.* California law allows for the exercise of "jurisdiction on any basis not inconsistent with the Constitution of th[e] state or of the United States." Cal. Civ. Proc. Code § 410.10. Due process accordingly requires that a non-resident defendant have either a "substantial, continuous, and systematic" presence in the forum state or sufficient "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted). A plaintiff may invoke either general or specific personal jurisdiction. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes." *Id.*

### ii. Analysis

Here, Plaintiffs contend that the Court has specific jurisdiction over Defendant.[2] *See* Dkt. No. 31 at 9–11 (urging that Defendant has sufficient "minimum contacts" with California); *see also* FAC at ¶ 12 (alleging the Court has personal jurisdiction over Defendant because it "has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court

---

[2] It is not clear whether Plaintiffs also suggest that the Court has general jurisdiction over Defendant. Nevertheless, the Court finds that Plaintiffs have not adequately alleged general jurisdiction. Even according to the FAC, Defendant "is a UK corporation" with its Registered Office in Middlesex, United Kingdom. *See* FAC at ¶ 8; *see also* Myers Decl. at ¶ 6. As such, the Court cannot say that Defendant's affiliations are so "continuous and systematic" as to render it "at home" in California. *Ranza*, 793 F.3d at 1069.

6

proper and necessary"). The Ninth Circuit uses the following three-prong test to analyze whether a court has specific jurisdiction:

> (1) The non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. Plaintiffs bear the burden on the first two prongs. *Id*. If they succeed in satisfying both, then the burden shifts to Defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id*. (quotation omitted). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).

### a. Prong One: Purposeful Direction or Purposeful Availment

As to the first prong, the parties at least superficially dispute what test the Court should apply. *Compare* Dkt. No. 25 at 7–8, *with* Dkt. No. 31 at 9–11.

The first prong contains two distinct concepts: availment and direction. *See Schwarzenegger*, 374 F.3d at 802 ("[A]vailment and direction are, in fact, two distinct concepts."). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.* "By taking such actions, a defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "In return for these 'benefits and protections,' a defendant must—as a quid pro quo—'submit to the burdens of litigation in that forum.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). "A showing that a defendant purposefully directed his conduct toward a forum state, by contrast, usually consists of evidence of the defendant's actions outside the forum state

7

that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id.* at 803.

As the Ninth Circuit has explained, "[a] purposeful availment analysis is most often used in suits sounding in contract." *Id.* at 802. "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.* Despite this guidance, Plaintiffs appear to suggest that the Court should apply the purposeful availment analysis. *See* Dkt. No. 31 at 9. Plaintiffs do not cite any cases in which a court applied the purposeful direction analysis to a tort claim under the VPPA or UCL. Still, the Ninth Circuit has recognized that its "cases do not impose a rigid dividing line between purposeful availment and purposeful direction." *Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1088–89 (9th Cir. 2023) (quotation omitted). "Although the distinction between purposeful availment and direction is often a useful and appropriate doctrinal table-setting device, there's no need to adhere to [this] iron-clad doctrinal dichotomy in every case." *Id.* (quotation omitted).

Rather than rigidly apply one test over the other, the Court first considers the contacts that Plaintiffs allege Defendant has with California. *See Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023) ("[W]hen considering specific jurisdiction, courts should comprehensively evaluate the extent of the defendant's contacts with the forum state and those contacts' relationship to the plaintiffs' claims—which may mean looking at both purposeful availment and purposeful direction."). In the complaint, Plaintiffs allege the following forum-related contacts:

- Defendant "do[es] business as Willow TV." *See* FAC at ¶ 3.
- "California consumers are encouraged to, and do, sign up for Willow TV's subscription service" through the Willow TV website. *See id.* at ¶ 9.
- "Willow TV maintains its U.S. office in Santa Clara County . . . ." *Id.* at ¶ 13.
- "Willow's 'Terms and Conditions' contain a California choice of law provision." *Id.* at ¶ 66.

In opposition to the motion to dismiss, Plaintiffs also ask the Court to take judicial notice

8

of the Willow Terms of Service.[3]  *See* Dkt. No. 31 at 9–11.  Plaintiffs attach screenshots of the Terms of Service, accessed from the website in February 2024.  *See* Dkt. No. 31-1, Ex. A.  The Terms of Service further state:

- The website, www.willow.tv "is maintained and operated by" Defendant.  *See id.* at 4.[4]
- The subscriber "acknowledge[s] that use of the Site or Subscription Services will use or cause to be used Willow TV servers located in California."  *Id.* at 7.
- "The Willow Monthly Subscription package . . . shall be collected by [Defendant's] collection agent 'Cricket Acquisition Corporation,'" located in Mountain View, California.  *Id.*
- "The relationship between [the subscriber] and Willow TV shall be governed by the laws of the State of California . . . ."  *Id.* at 10.

Defendant, for its part, offers the declaration of Mr. Myers, explaining that Defendant "acquired Willow TV in 2016."  *See* Myers Decl. at ¶ 5.  Defendant, however, "is a UK corporation" with a registered office in Middlesex, and "is not a California corporation, nor is it registered to do business in California."  *Id.* at ¶ 6.  Mr. Myers further asserts that Defendant "does not specifically or intentionally direct its marketing or services toward California residents."  *Id.* at ¶ 7.  Defendant also "does not consent to personal jurisdiction in the State of California."  *Id.*  But even if the Court disregarded Defendant's alleged marketing efforts in California, Plaintiffs have identified several facts that suggest that Defendant may avail itself of the privilege of doing business in California:  "Defendant intentionally chose a California collection agent, California servers, a California office, and California law to govern its business."  *See* Dkt. No. 31 at 10, & n.4.

---

[3] Defendant does not appear to challenge the reliance on these Terms of Use, and instead acknowledges that they are incorporated by reference in the FAC.  *See* Dkt. No. 32 at 4, n.3.  The Court therefore takes judicial notice of them.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

[4] For ease of reference, the Court refers to the PDF pages rather than the Exhibit's internal pagination unless otherwise specified.

1  Defendant does not dispute these facts, but simply urges that they are insufficient to
2  support specific jurisdiction. *See* Dkt. No. 32 at 4–6. Its cited authorities, however, do not
3  conclusively preclude a finding of jurisdiction here. In *Burger King Corp. v. Rudzewicz*, for
4  example, the Supreme Court indicated that a choice of law provision "standing alone would be
5  insufficient to confer jurisdiction." 471 U.S. 462, 482 (1985). But in the same paragraph the
6  Court specifically explained that "[n]othing in our cases, however, suggests that a choice-of-law
7  provision should be *ignored* in considering whether a defendant has purposefully invoked the
8  benefits and protections of a State's laws for jurisdictional purposes." *See id.* (quotation omitted)
9  (emphasis added). The court in *Mewawalla v. Middleman* also did not ignore a forum selection
10 clause, but instead considered whether knowledge of the clause was sufficient to subject a non-
11 signatory to the agreement to the jurisdiction of California courts. 601 F. Supp. 3d 574, 589–90,
12 593 (N.D. Cal. 2022) (citing *Burger King*, 471 U.S. at 481–82).
13 Similarly, Defendant asserts that "the Ninth Circuit has already rejected the notion that the
14 location of a server may give rise to personal jurisdiction." Dkt. No. 32 at 5. But Defendant only
15 cites two *district court* cases discussing servers. In *Dish Network, LLC v. Jadoo TV, Inc.*, the
16 plaintiffs filed a copyright infringement case against JadooTV, a California corporation, and
17 Haseeb Shah, an individual residing in Pakistan. *See* No. CV 18-9768 FMO (KSX), 2020 WL
18 6536659, at *1 (C.D. Cal. Mar. 16, 2020). JadooTV allegedly provided customers with
19 unlicensed, on-demand video content, and Shah allegedly was an agent of JadooTV who
20 controlled at least some of the computer servers to transmit allegedly infringing content. *Id.* The
21 court considered whether Shah's management of the servers—which transmitted content to the
22 United States and California—could give rise to specific jurisdiction. *See id.* at *3–7. The court
23 analogized the servers to "passive websites" that were accessible from, but did not specifically
24 target, California. *Id.* at *7. The court further found that the location of the servers did not change
25 this calculus. *Id.* And in *Prevail Legal, Inc. v. Gordon*, the court concluded that it was simply
26 "random" where third-party servers were located, such that personal jurisdiction could not be
27 established just because they were located in California. No. 20-CV-07173-BLF, 2021 WL
28 1947578, at *4–6 (N.D. Cal. May 14, 2021) (collecting cases); *accord Hungerstation LLC v. Fast*

10

*Choice LLC*, No. 19-CV-05861-HSG, 2020 WL 137160, at *5–6 (N.D. Cal. Jan. 13, 2020) (distinguishing "fortuitous" location of third-party servers from servers affiliated with or controlled by defendant) (citing *DEX Sys., Inc. v. Deutsche Post AG*, 727 F. App'x 276, 278 (9th Cir. 2018)).

These cases highlight the fact-intensive inquiry required when analyzing personal jurisdiction. Defendant, however, offers little analysis of the sufficiency of its contacts with California when viewed collectively. Nevertheless, because Plaintiffs must also establish that they meet Prong Two, the Court considers the nature of these contacts as they relate to Plaintiffs' claims for invasion of privacy under the VPPA and UCL.

### b. Prong Two: Arising out of Forum Contacts

Even if the Court were to assume that Plaintiffs met the first prong of the test, they must also establish that their claims arise out of or are related to Defendant's contacts with California. *See Schwarzenegger*, 374 F.3d at 802. Plaintiffs have not even attempted to draw this connection here. Despite their burden, Plaintiffs' opposition brief does not mention this part of the three-prong test at all. *See* Dkt. No. 31 at 7–11. General references to Defendant's business practices "are orthogonal to whether the conduct violative of VPPA alleged here ties to California." *See Carroll v. J.M. Smucker Co.*, No. C 22-08952 WHA, 2023 WL 4053796, at *4 (N.D. Cal. June 15, 2023) (granting motion to dismiss for lack of personal jurisdiction in VPPA case). The Court therefore **GRANTS** Defendant's motion to dismiss for lack of personal jurisdiction on the record currently before it.

### c. Jurisdictional Discovery

Plaintiffs ask the Court to permit jurisdictional discovery. *See* Dkt. No. 31 at 8–9. "A district court is vested with broad discretion to permit or deny [jurisdictional] discovery." *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). "Jurisdictional discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 507 (9th Cir. 2023) (quotation omitted). Nevertheless, "a mere hunch that discovery might yield jurisdictionally relevant facts, or bare allegations in the face of specific

1  denials, are insufficient reasons for a court to grant jurisdictional discovery." *Id.* (quotation
2  omitted).
3        Here, the Court finds that Plaintiffs have offered more than just a hunch that discovery
4  may uncover additional pertinent facts.  As identified above, Plaintiffs have suggested—and
5  Defendant does not meaningfully dispute—that Willow TV was run out of California before it was
6  acquired, and Defendant may continue to run a significant part of the Willow TV business from
7  California.  Defendant maintains an office for Willow TV here, its servers and collection agent are
8  located here, and the Terms of Use document which governs its relationship with its subscribers
9  explicitly applies California law.
10       Moreover, although Defendant superficially denied that it has directed its marketing to and
11 targeted customers in California, *see* Myers Decl. at ¶ 7, the Court agrees with Plaintiffs that how
12 specifically or intentionally Defendant cultivates this market may be dispositive on this
13 jurisdictional question.  The Court also notes that Defendant said nothing about its efforts to target
14 customers in the United States more broadly.  According to the FAC,  Defendant's annual report
15 stated that its "principal activity" was "to acquire, distribute and broadcast the cricket contents
16 [*sic*] primarily in the territories of *United States of America*, Canada and Caribbean Islands via
17 high-definition television and digital video channels dedicated to the sport of cricket."  FAC at
18 ¶ 10 (emphasis added).  The FAC further alleges that "Willow TV represents itself as the 'largest
19 broadcaster of cricket in the *United States* and Canada.'" *Id.* at ¶ 9 (emphasis added).  Although
20 rarely invoked, "[p]ersonal jurisdiction is proper under Rule 4(k)(2) when (1) the action arises
21 under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general
22 jurisdiction, and (3) the court's exercise of jurisdiction comports with due process." *See Ayla,*
23 *LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979–85 (9th Cir. 2021) (citing Fed. R. Civ. P. 4(k)(2))
24 (finding personal jurisdiction under Rule 4(k)(2) for foreign company with its place of
25 incorporation and principle place of business in Australia).
26       The Court therefore **GRANTS** Plaintiffs' request for jurisdictional discovery and will stay
27 the final determination of whether it can exercise personal jurisdiction over Defendant.
28 //

## III. CONCLUSION

The Court therefore **DENIES** Defendant's motion to dismiss for lack of standing, but **GRANTS** the motion for lack of personal jurisdiction without prejudice. Dkt. No. 25. The Court further **GRANTS** Plaintiffs' request for jurisdictional discovery and will permit Plaintiffs time to conduct this discovery before amending the complaint and before the parties re-brief this issue.

The Court is aware that jurisdictional discovery could, if unchecked, improperly bleed into merits discovery. The Court therefore **DIRECTS** the parties to meet and confer about the scope and duration of jurisdictional discovery and the timing of an amended complaint, and to file a joint proposal for the Court's review and approval by September 27, 2024. If the parties cannot reach an agreement, each side shall file their own respective proposal by September 27, 2024. Each side may support its respective proposal with no more than five pages of argument.

The Court further **SETS** case a case management conference on October 8, 2024, at 2:00 p.m. The hearing will be held by Public Zoom Webinar. All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg. All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.

Recently, Plaintiffs urged the Court to set a case management conference or compel Defendant to participate in a Rule 26(f) conference so that Plaintiffs could begin conducting merits discovery while the motion to dismiss was pending. *See* Dkt. No. 35. Although the Court has now set a case management conference to address the question of personal jurisdiction, the Court finds that there is good cause to stay merits discovery until the question of personal jurisdiction has been resolved. Accordingly, the Court **DENIES** Plaintiffs' administrative motion to schedule an initial conference or compel Defendant to confer. Dkt. No. 35.

**IT IS SO ORDERED.**

Dated: 9/12/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

13