Julian Hammond (SBN 268489)
jhammond@hammondlawpc.com
Ari Cherniak (SBN 290071)
acherniak@hammondlawpc.com
Polina Brandler (SBN 269086)
pbrandler@hammondlawpc.com
HAMMONDLAW, P.C.
1201 Pacific Ave, 6th Floor
Tacoma, WA 98402
Telephone: (310) 807-1666
Fax: (310) 295-2385

*Attorneys for Plaintiffs and
the Putative Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| HARI KISHORE and BRETT WALKER, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>   v.<br><br>TIMES INTERNET (UK) LTD.,<br><br>          Defendant. | Case No. 4:23-cv-03594-HSG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:      Hon. Haywood S. Gilliam, Jr.<br>Courtroom:  2<br>Hearing Date: March 5, 2026<br>Hearing Time: 2:00 p.m. |

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 5, 2026 at 2:00 p.m., or as soon thereafter as this matter may be heard, before the Honorable Haywood S. Gilliam, Jr. of the United States District Court for the Northern District of California, Plaintiffs Hari Kishore and Brett Walker ("Plaintiffs"), on behalf of themselves and the putative Class, by and through their Counsel, will and hereby do move the Court for entry of an Order, pursuant to Federal Rule of Civil Procedure 23(e), in the above-captioned action (the "Action"):

1.    Certifying the proposed Class for purposes of settlement;

2.    Provisionally appointing Plaintiffs Hari Kishore and Brett Walker as Class Representatives of the Settlement Class, and HammondLaw, P.C. as Class Counsel for purposes of settlement;

3.    Granting preliminary approval of the proposed class action settlement between Plaintiffs and Defendant Times Internet (UK) LTD ("Defendant" or "WillowTV") as fair, adequate, and reasonable, based upon the terms set forth in the Parties' Class Action Settlement Agreement ("Settlement Agreement"),[1] including payment by Defendant of a non-reversionary cash settlement of **$850,000.00** for the benefit of the Settlement Class;

4.    Approving the allocation of the Settlement Fund as contemplated in the Settlement Agreement;

5.    Approving the form and substance of the proposed email Notice of Proposed Settlement of Class Action ("Class Notice"), Notice to be provided on the Settlement Website ("Website Notice"), and Claim Form ("Claim Form"); the manner and timing of disseminating notice to the Class (the "Notice Plan"); and the selection of Simpluris, Inc. as the Settlement Administrator;

---

[1] Capitalized terms shall have the same meaning as set forth in the Class Action Settlement Agreement and Release, dated December 19, 2025, attached as **Exhibit 1** to the Declaration of Julian Hammond in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Hammond Decl.").

1    6.    Setting deadlines for Class Members to exercise their rights in connection with the

2    proposed Settlement; and

3    7.    Scheduling a hearing date for final approval of the Settlement and application for

4    attorneys' fees and expenses, and service awards.

5    This Motion is based on: the Memorandum of Points and Authorities below and the exhibits

6    thereto; the Declaration of Julian Hammond and the exhibits thereto, including the Settlement Agreement

7    and exhibits thereto; the Declaration of Settlement Administrator Simpluris, Inc., the Court's record in

8    this matter; and such oral and documentary evidence as may be presented at or before the hearing on this

9    matter.

# TABLE OF CONTENTS

NOTICE OF MOTION ...................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF THE ISSUES TO BE DECIDED ........................................... 2

III.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ....................... 2

IV.     SUMMARY OF THE PROPOSED SETTLEMENT ............................................. 5

    A.   THE CLASS ............................................................................................................. 5
    B.   SETTLEMENT CONSIDERATION ............................................................................. 5
    C.   DISTRIBUTION OF THE SETTLEMENT FUND ......................................................... 6
    D.   THE SETTLEMENT'S RELEASE ............................................................................... 6
    E.   THE SETTLEMENT AGREEMENT ALLOWS COUNSEL TO SEEK FEES AND COSTS AND THE
        SETTLEMENT CLASS REPRESENTATIVES TO SEEK SERVICE AWARDS ..................... 7

V.      THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES ................... 8

    A.   THE SETTLEMENT CLASS SATISFIES THE RULE 23(A) PREREQUISITES ................ 8
    B.   THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED ...................................... 11

VI.     SETTLEMENT APPROVAL IS WARRANTED ................................................ 13

    A.   THE STRENGTHS AND RISKS OF PLAINTIFFS' CASE .......................................... 13
    B.   FURTHER LITIGATION WOULD BE RISKY, EXPENSIVE, COMPLEX, AND LENGTHY ............... 15
    C.   THE RISKS ASSOCIATED WITH CERTIFYING THE CLASS AND MAINTAINING THE CASE AS A
        CLASS ACTION THROUGH TRIAL ......................................................................... 15
    D.   THE RELIEF OFFERED IN THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE ........... 16
    E.   THE SETTLEMENT IS INFORMED BY SUFFICIENT INVESTIGATION AND INFORMAL DISCOVERY
        TO PERMIT AN INFORMED DECISION ................................................................... 17
    F.   COUNSEL BELIEVES THE SETTLEMENT IS AN EXCELLENT RESULT ..................... 18
    G.   GOVERNMENTAL PARTICIPATION IS NOT AT ISSUE HERE ................................. 18
    H.   THE SETTLEMENT ALSO SATISFIES THE BLUETOOTH FACTORS ......................... 18

VII.    THE PROPOSED NOTICE PROGRAM, SETTLEMENT ADMINISTRATOR, AND
    PROCESS FOR CLAIMS, OPT-OUTS, AND OBJECTIONS SHOULD BE APPROVED ... 19

    A.   THE PROPOSED NOTICE PLAN ............................................................................ 19
    B.   THE SETTLEMENT ADMINISTRATOR .................................................................. 21
    C.   OPT-OUTS AND OBJECTIONS: TIMELINE AND INSTRUCTIONS ........................... 21
    D.   THE CLAIMS PROCESS ........................................................................................ 22

VIII.   OTHER CASES AFFECTED ............................................................................. 22

IX.     THE PROPOSED FINAL APPROVAL HEARING SCHEDULE ...................... 23

X.      CONCLUSION ................................................................................................... 23

1

## TABLE OF AUTHORITIES

2

**CASES**

3

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................. 8, 11

4

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ............................. 17

5

*Bertoia v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) . 18

*Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021)................................................... 19

6

*Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566 (9th Cir. 2004)....................................... 13

7

*Edwards v. Nat'l Milk Producers Fed'n,* No. 11-CV-04766-JSW, 2017 WL 3623734 (N.D. Cal. June 26, 2017) ................................................................................................... 20

8

*Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) ..................................................................................................... 18

9

*Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594 (9th Cir. 2016) ............................................................................ 15

10

11

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147 (1982)................................................. 12

12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................................... 10, 11, 12

13

*Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir. 1992)............................................. 9

14

*Hopkins v. Stryker Sales Corp.,* 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) .......................... 7

15

*In re Facebook, Inc. Internet Tracking Litigation*, No. 22-16903, 2024 WL 700985 (9th Cir. Feb. 21, 2024) ...................................................................................................... 14

16

*In re HighTech Emp. Antitrust Litig.*, 985 F.Supp.2d 1167 (N.D. Cal. 2013 ........................ 12

17

*In re Hulu Priv. Litig.*, 2014 WL 2758598 (N.D. Cal. June 17, 2014).................................. 15

18

*In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) (en banc) ................ 16

19

*In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934 (9th Cir. 2015) .............................. 13

20

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020), *aff'd,* No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) ......... 10

21

*Jabbari v. Farmer*, 965 F.3d 1001 (2020) ............................................................... 16

22

*Linney v. Cellular Alaska P'ship,* 151 F.3d 1234 (9th Cir. 2017) ................................. 15, 17

23

*Martin v. Sysco Corp.*, No. 16-cv-00990-DAD-SAB, 2019 WL 3253878 (E.D. Cal. July 19, 2019) .. 18

*Munday v. Navy Fed. Credit Union,* No. SACV 15-1629-JLS (KESx), 2016 WL 7655807 (C.D. Cal. Sept. 15, 2016) .............................................................................................. 1

24

25

*Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014) ............................................... 17

26

*Schaffer v. Litton Loan Servicing, LP,* No. CV 05-07673 MMM (JCx), 2012 WL 10274679 (C.D. Cal. Nov. 13, 2012) ............................................................................................... 15

27

*Slaven v. BP Am., Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000) ............................................... 8

28

*Smith v. Cardinal Logistics Mgmt. Corp.,* No. 07-cv-02104-SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ..................................................................................................... 12

*Solomon v. Flipps Media, Inc.,* 136 F.4th 41 (2d Cir. May 1, 2025) .......................................... 4

*St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63 (1919) .................................................. 14

*Staton v. Boeing Co.*, 327 F.3d 938 (2003) ........................................................................ 10

*Valliere v. Tesoro Refin. & Mktg. Co. LLC,* No. 17-cv-00123-JST, 2020 WL 13505042 (N.D. Cal. June 26, 2020) ...................................................................................................... 9

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) ............................................ 7

*Wakefield v. ViSalus, Inc.,* 51 F. 4th 1109 (9th Cir. 2022) .................................................. 14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...................................................... 8, 9

**STATUTES**

18 U.S.C. § 2710 *et seq.* ................................................................................................ 1, 2

18 U.S.C. § 2710(a)(4) ....................................................................................................... 13

18 U.S.C. § 2710(b)(2)(B) ................................................................................................ 13

18 U.S.C. § 2710(c)(2) ......................................................................................................... 5

18 U.S.C. § 2710(c)(2)(A) ............................................................................................. 14, 15

28 U.S.C. § 1715 ................................................................................................................ 20

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ....................................................................... 1, 2

Fed. R. Civ. P. 23(a)(3) ................................................................................................... 9, 13

Fed. R. Civ. P. 23(b)(1) ..................................................................................................... 13

Fed. R. Civ. P. 23(b)(3) ................................................................................................ 11, 12

Fed. R. Civ. P. 23(e) ........................................................................................................... 2

Fed. R. Civ. P. 23(e)(2) ..................................................................................................... 13

**FEDERAL DOCKETED CASES**

*Ade, et al. v. Viki, Inc.,* No. 23-cv-02161-RFL-LB (N.D. Cal. October 27, 2025) ..................... 16, 17

*Beltran, Jr. v. Sony Pictures Entertainment Inc.* ("*CrunchyRoll*"), No. 1:22-cv-04858 (N.D. Ill. Dec. 7, 2023) ................................................................................................................ 17

*Fiorentino v. FloSports, Inc.*, No. 1:22-cv-11502 (D. Mass. Feb. 16, 2024) ............................ 16

*Stark v. Patreon, Inc.*, No. 3:22-cv-03131 (N.D. Cal. Jan. 30, 2025) ................................. 16, 17

*Vela v. AMC Networks, Inc.*, No. 1:23-cv-02524 (S.D.N.Y. May 2, 2024) .............................. 16

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010) ............................. 12

ii

**OTHER AUTHORITIES**

7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 (3d ed. 2005) ............................................................................................................................ 12

Fed. Trade Comm'n, Consumers & Class Actions: A Retrospective & Analysis of Settlement Campaigns (Sept. 2019)............................................................................................................ 22

Federal Judicial Center, Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide 2010 .......................................................................................................... 20

Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97 (2009) ............................................................................................................................................. 9

| Guidance Section | Guidance Topic | Location Where Guidance Topic is Discussed |
|---|---|---|
| (1) 1. | Differences Between Settlement Class and Classes in Complaint | Page 5; Hammond Decl. ¶ 20 n.6 |
| (1) 2. | Difference Between Released Claims Claims in Complaint | Pages 6-7; Hammond Decl. ¶ 27 |
| (1) 3. | Class Recovery Under Settlement; Potential Exposure; Discount | Pages 5-6, 13-15; Hammond Decl. ¶¶ 3,5, 29-36 |
| (1) 4. | Other Cases Affected by the Settlement | Page 22; Hammond Decl. ¶ 28 |
| (1) 5. | Proposed Allocation Plan | Page 6; Settlement Agreement, sec. IX |
| (1) 6. | Expected Claim Rate | Pages 1, 6; Hammond Decl. ¶ 5 |
| (1) 7. | Reversion | Pages 5, 19; Settlement Agreement ¶ 28; Hammond Decl. ¶ 22 |
| (2) 1. | Settlement Administrator | Page 21; Hammond Decl. ¶ 61 |
| (2) 2. | Class Member Data; Costs of Administration | Page 21; Simpluris Decl. ¶ 19 |
| (3) | Notice | Settlement Agreement, ¶¶ 58-59 and Exs. A, B; Hammond Decl. ¶ 61; Simpluris Decl. ¶ 20 |
| (4) | Opt-outs | Settlement Agreement, Ex. B |
| (5) | Objections | Settlement Agreement, Exs. A, B |
| (6) | Fees and costs | Pages 7-8; Hammond Decl. ¶¶ 57-60 |
| (7) | Service awards | Page 8; Hammond Decl. ¶¶ 64-65 |
| (8) | Cy Pres | Settlement Agreement ¶ 72; Hammond Decl. ¶¶ 66-69 |
| (9) | Timeline | Page 23 |
| (10) | CAFA Notice | Pages 20-21 |
| (11) | Comparable Outcomes | Hammond Decl., Ex. 2 |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Hari Kishore and Brett Walker ("Plaintiffs") seek preliminary approval of a settlement with Defendant Times Internet (UK) LTD d/b/a willow.tv ("Defendant"), under which Defendant will pay $850,000 to create a non-reversionary settlement fund for the benefit of the Class and affirms that it will remain in compliance with the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq*. (the "VPPA").[2] The settlement would fully resolve Plaintiffs' claims, brought on behalf of a putative nationwide class,[3] that Defendant unlawfully disclosed to third parties its customers' personally identifiable information along with titles of videos they watched, in violation of the VPPA and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*

The proposed Settlement is an excellent result for Settlement Class Members. If the Court grants preliminary approval, the Settlement will result in a gross per-Class Member monetary recovery of $11.21, which, as discussed below, is at the higher end of recent comparable VPPA settlements. *See infra* Part VI.D; Decl. of Julian Hammond ("Hammond Decl.") ¶ 5.  The Settlement contemplates an initial distribution, on a pro-rata basis, and a potential second distribution if more than $100,000 remains in the Net Settlement Fund after the initial distribution to Settlement Class Members who submit claims. SA ¶¶ 68-71.  Based on the typical claims rate of approximately 3% to 5% in similar cases,[4] Plaintiffs anticipate that a second distribution will take place and that each Settlement Class Member who submits a valid claim and receives an initial settlement payment will receive a payment of between $128.72 and $214.54 net.

---

[2] Defendant removed the Meta Pixel from its website on September 22, 2023, after Plaintiffs filed this action. Settlement Agreement ("SA") ¶ 81(a).

[3] The First Amended Complaint also alleges the same claim on behalf of a California Subclass. However, the Settlement Class does not include a subclass. SA ¶ 36.

[4] Hammond Decl. ¶ 5 and Exhibit 2 thereto; *see also Munday v. Navy Fed. Credit Union,* No. SACV 15-1629-JLS (KESx), 2016 WL 7655807, at *8 n.1 (C.D. Cal. Sept. 15, 2016) ("[t]he prevailing rule of thumb with respect to consumer class actions is [a claims rate of] 3–5 percent.").

The amount of the recovery is particularly impressive given the material risk of a lesser recovery or no recovery at all.  Defendant vigorously denied liability and contended, among other things, that it did not knowingly disclose any personally identifiable information, that the information allegedly shared did not constitute personally identifiable information (PII), and that Plaintiffs consented to any alleged tracking. Defendant also argued that Plaintiffs would be unable to certify a class because not all users have Facebook accounts and because some users employ browsers, settings, or tools that prevent the Meta Pixel from transmitting any PII. Plaintiffs' Counsel carefully weighed these risks in deciding to settle rather than pursue the case through class certification and trial.

Accordingly, Plaintiffs respectfully request that the Court grant preliminary approval and enter the proposed order directing notice to the class and schedule a final fairness hearing.

## II.    STATEMENT OF THE ISSUES TO BE DECIDED

The issues presented are whether:

(1) the proposed Settlement warrants preliminary approval under Rule 23(e);

(2) the Action should be certified as a class action for settlement purposes; and

(3) notice should be authorized and a final approval hearing scheduled.

## III.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.    <u>Pre-Complaint Investigation and Plaintiffs' Allegations</u>

Plaintiffs filed their Complaint on July 20, 2023 and their First Amended Complaint on August 2, 2023.  Dkt. 1, 10. Plaintiffs allege, on behalf of themselves and a nationwide putative class of consumers, that Defendant, a video-streaming and paid-cable service offering access to streaming and pre-recorded cricket matches, unlawfully disclosed to third parties, through the Meta Pixel and other tracking tools, information which identifies its customers as having requested or obtained specific video materials or services, allegedly without permission in violation of the Video Privacy Protection Act, 18 U.S.C. §§ 2710 *et seq*. (the "VPPA") and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq*.  Dkt. 10.

Plaintiffs' counsel conducted a thorough investigation of the facts and claims in this case prior to the filing of the Complaint, including analyzing the presence of tracking tools on Defendant's website and retaining an expert to analyze the network traffic while third-party tracking tools were active on

2

Defendant's website. Hammond Decl. ¶ 9.  Based on this investigation, Plaintiffs' Counsel was able to confirm that using the tracking pixels, Defendant disclosed the full titles of videos that its subscribers watched to third parties, along with personal identifying information such as subscribers' Facebook IDs contained in "c_user cookies" or datr and fr cookies.  *Id.*; Dkt 10, at ¶¶ 35-38. Plaintiffs alleged that Defendant did so without its users' consent. Dkt. 10, at ¶¶ 4-5, 17.

Plaintiffs' counsel also analyzed the subscription process and Defendant's Terms of Service and the Privacy Policy. Hammond Decl. ¶ 9.  In addition, Plaintiffs analyzed changes to the sign up and purchases process and to the Terms of Service and the Privacy Policy by accessing historic screenshots of the website available on the Wayback Machine.  *Id.*  Plaintiffs' Counsel also analyzed dozens of orders on motions to dismiss and summary judgment motions in other VPPA cases to assess the strengths and weaknesses of Plaintiffs' claims.  *Id.,* ¶ 8 n.5.

## B. **First Mediation**

The parties participated in their first mediation on January 9, 2024. Prior to participating in the mediation, Defendant provided informal discovery and the parties prepared and exchanged detailed briefs.   However, the parties were not able to reach settlement. Hammond Decl. ¶ 11.

## C. **Motion to Dismiss**

After mediation failed, on January 30, 2024, Defendant filed a Motion to Dismiss. In its Motion, Defendant argued that Plaintiff Kishore lacks Article III standing because he never watched a video on the Willow TV web platform, which is the only platform where the Meta Pixel was active; that the Court lacks personal jurisdiction over Defendant because it is based in the U.K. and does not have sufficient minimum contacts with California; and that Plaintiffs fail to adequately allege a violation of the VPPA because they do not demonstrate that Defendant knowingly disclosed PII or that any such disclosure was outside the scope of an exception to the VPPA. Finally, Defendant alleged that Plaintiffs lack statutory standing to sue under California's Unfair Competition Law (UCL) as they do not allege any injury in fact or loss of money or property, and their allegations of unlawful, unfair, or fraudulent practices are conclusory. Dkt. 25; Hammond Decl. ¶ 12.

Plaintiffs filed an extensively researched and detailed 25-page opposition supported by a declaration.  Dkt. 31; Hammond Decl. ¶ 13. In their opposition, Plaintiffs requested that the Court allow

3

them to conduct jurisdictional discovery. Dkt. 31.

On September 12, 2024, after the Motion was fully briefed, the Court issued an Order denying Defendant's Motion to Dismiss based on lack of standing and granting the motion for lack of personal jurisdiction without prejudice, and further granting Plaintiffs' request for jurisdictional discovery. Dkt. 37; Hammond Decl. ¶ 14. Defendant then withdrew its jurisdictional arguments and the Court took the remaining arguments under consideration. Dkt. 40, 41.

After the Court's ruling, the Parties agreed to return to mediation. Hammond Decl. ¶ 15. On March 18, 2025, during a Status Conference, Defendant withdrew its Motion to Dismiss, without prejudice to re-filing it if the Parties did not reach settlement at mediation. Dkt. 46; Hammond Decl. ¶ 15.

### D. <u>Second Mediation and Settlement</u>

On May 8, 2025, the Parties participated in a second mediation, with the assistance of a retired district court judge.  Hammond Decl. ¶ 17. The Parties each submitted detailed mediation briefs in advance of the mediation. After the issuance of a Second Circuit decision days before the mediation, Defendant submitted a supplemental mediation brief based on *Solomon v. Flipps Media, Inc.*, 136 F.4th 41 (2d Cir. May 1, 2025), in which the Second Circuit affirmed the trial court's denial of the defendant's motion to dismiss. Plaintiffs analyzed the *Solomon* decision and prepared a detailed response to Defendant's supplemental brief. Hammond Decl. ¶ 17.

Following a full day of arm's-length mediation, the Parties still could not reach settlement and the mediation ended with a mediator's proposal.  *Id.* ¶ 18. The Parties subsequently accepted the mediator's proposal and began to negotiate the details of the Settlement Agreement.  *Id.* Following more than two months of negotiations over the details of the agreement, the Parties were about to proceed to signing the Settlement Agreement when they reached an impasse on a key issue and the settlement came close to falling apart.  *Id.* Nevertheless, the Parties continued to engage in settlement negotiations over the next several months, exchanging numerous emails and participating in multiple discussions and were finally able to resolve the impasse. *Id.* Following several additional weeks, the parties finally executed the Settlement Agreement on December 19, 2025 – seven months following the mediation.  *Id.*

*//*

## IV.    SUMMARY OF THE PROPOSED SETTLEMENT

### A.    The Class

The Settlement Class is defined as "[a]ll persons in the United States who subscribed to Willow TV and watched pre-recorded videos on willow.tv at any time during the Class Period." SA ¶ 36. Class Period is defined as the period between July 20, 2021 and September 22, 2023, which is the time Defendant removed the Meta Pixel from its website. *Id.* ¶ 13.

The only difference between the definition of the Settlement Class and the definition of the Class and Subclass proposed in the First Amended Complaint is the fact that the Settlement Class combines the definitions of the Class and Subclass in the First Amended Complaint. Plaintiffs allege a VPPA claim on behalf of the nationwide Class, and a UCL claim on behalf of the same nationwide class, or, in the alternative, on behalf of the California Subclass. Dkt. 10, ¶¶ 45, 65-80. Combining the Class and California Subclass for settlement purposes is fair and efficient, including because the UCL (even if it were to proceed only on behalf of the California Subclass) does not add independent liability or factual issues, but rises and falls with the VPPA violation. Hammond Decl. ¶ 20 n.6. If Plaintiffs prevailed on the VPPA Claims, all class members would already receive a minimum of $2,500 per person in statutory damages (18 U.S.C. § 2710(c)(2)).

### B.    Settlement Consideration

The Settlement Agreement creates a non-reversionary Qualified Settlement Fund for the benefit of the Settlement Class in the amount of **$850,000**. SA ¶ 28.

In addition, Defendant removed the Meta Pixel from its website after Plaintiffs filed this case and has affirmed that it will remain in compliance with the VPPA. Willow also implemented a pop-up notification on its desktop website regarding cookies and other tracking technologies and has removed the prechecked box next to the statement that users agree to its Terms of Service and Privacy Policy upon registering. SA ¶¶ 81-82; Hammond Decl. ¶ 23. The combination of the common fund and prospective injunctive relief will provide direct monetary relief to Settlement Class Members and address the conduct challenged in this Action.

After deductions for Court-approved attorneys' fees (up to 33%), litigation expenses (currently $28,426.03) service awards to the Class Representatives (up to $7,500 each), and notice and settlement

5

administration costs (estimated at $38,028), the remaining funds (the "Net Settlement Fund") will be distributed pro rata, as described below, to Settlement Class Members who submit valid claims. SA ¶¶ 67-72; Hammond Decl. ¶¶ 3, 60; Declaration of Settlement Administrator Simpluris Inc. In Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Simpluris Decl.") ¶ 19.

### C.    Distribution of the Settlement Fund

The Settlement Agreement provides for an initial distribution and a potential secondary distribution.  The initial distribution will be made on a pro-rata basis from the Net Settlement Fund based on the estimated class size of 75,830 (i.e. $850,000/75,830). SA ¶ 68. If more than $100,000 in unclaimed funds remains after the initial distribution to Settlement Class Members who submit valid claims, the Settlement Administrator will conduct a secondary distribution on a pro rata basis, calculated by dividing the remaining amount by the number of claimants who receive the initial payment. SA ¶ 71. If $100,000 or less remains in unclaimed funds, those funds will be distributed to the approved cy pres recipient, subject to Court approval. SA ¶ 72.

Based on the estimated Settlement Class size of approximately 75,830 members, the gross per-capita value of the Settlement Fund is approximately $11.21. Hammond Decl. ¶ 5.  The Settlement therefore contemplates an initial pro-rata distribution of $11.21 gross (and $6.44 net) to each Settlement Class Member who submits a valid claim. *Id.*; SA ¶¶ 68, 71. Based on the typical claims rate of approximately 3% to 5% in similar cases,[5] Plaintiffs anticipate that a second distribution will occur and that each Settlement Class Member who submits a valid claim and receives an initial settlement payment will ultimately receive a total net payment of approximately $128.72 to $214.54.[6]  Hammond Decl. ¶ 5.

As discussed below, this level of recovery places the Settlement at or above the high end of comparable VPPA settlements. *See infra* Part VI.D.

### D.    The Settlement's Release

In exchange for the benefits to be provided to the Settlement Class, the Settlement Agreement proposes to release specific parties, including Times Internet (UK) Ltd., its affiliates, and each of their

---

[5] *See* fn. 4 above.

[6] The gross per claimant, based on the estimated 3% to 5% claims rate is between $224.18 and $373.64. Hammond Decl. ¶ 5 n.4.

respective past, present, and future vendors, customers, agents, employees, etc., from "all claims that are alleged in this Action, or that could have been pled based on the facts alleged in the Action and that arose during the Class Period," including a waiver under California Civil Code § 1542 as to those claims. SA ¶¶ 29, 38-39, 50-52.

**E.      The Settlement Agreement Allows Counsel to Seek Fees and Costs and the Settlement Class Representatives to Seek Service Awards**

Plaintiffs expect to apply for attorneys' fees of up to $280,500, representing 33% of the Settlement Fund. SA ¶ 54; Hammond Decl. ¶ 57.  Plaintiffs' Counsel's total lodestar,[7] as of December 28, 2025, is over $300,000, based on more than 350 hours devoted to the case thus far.  *Id.* ¶ 57.  If Plaintiffs' Counsel applies for fees now, their lodestar would represent a negative multiplier of 0.89. *See Id.* ¶¶57-58. Plaintiffs' Counsel expects that they will expend at least another 100 hours before final approval is granted. *Id.* ¶ 59.   Accordingly, instead of seeking a multiplier for the excellent result achieved, Plaintiffs' Counsel will seek a substantial negative multiplier. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (finding that, in approximately 83% of the cases surveyed, the multiplier was between 1.0 and 4.0 with a "majority . . . 54% . . . in the 1.5--3.0 range")*; Hopkins v. Stryker Sales Corp.,* 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases.").

The enforceability and effectiveness of the Settlement Agreement is not contingent upon approval of Plaintiffs' fee request. SA ¶ 55.  Should the Court award less than the amount sought by Class Counsel, the difference between the amount sought and the amount ultimately awarded by the Court shall remain in the Settlement Fund for distribution to eligible Settlement Class Members. *See* SA ¶ 19.

The Settlement Agreement also provides that Settlement Class Counsel may apply to the Court for reimbursement of actual litigation costs and expenses. SA ¶ 54. Currently, proposed Settlement Class Counsel have incurred a total of $28,426.03 in litigation costs and expenses to date, including fees

---

[7] Plaintiffs were represented by two law firms until approximately December 2024. Hammond Decl. ¶ 56.

charged by consulting experts, research costs, and professional fees paid to the two mediators. Hammond Decl. ¶ 60.

Finally, as set forth in the Settlement Agreement, Plaintiffs will ask for appointment as Settlement Class Representatives and seek approval of a service award of up to $7,500 each. SA ¶ 56; see also Hammond Decl. ¶¶ 64-65. As with Plaintiffs' fee request, the enforceability and effectiveness of the Settlement Agreement does not depend upon the amount of the Service Awards paid to Plaintiffs. *Id*.

## V.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASSES

### A.    The Settlement Class Satisfies the Rule 23(a) Prerequisites

Although the Parties have settled, the Court must nevertheless certify that the proposed Settlement Class satisfies Rule 23. Rule 23(a) requires: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). In addition, the Class must satisfy one of the three subsections of Rule 23(b). However, when "[c]onfronted with a request for a settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there [will] be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

#### 1.    Numerosity

Here, numerosity is met. The Class consists of an estimated 75,830 individuals dispersed throughout the United States. SA ¶¶ 36, 43. Numerosity is generally satisfied when a class exceeds forty members. *See, e.g., Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 654 (C.D. Cal. 2000).

#### 2.    Commonality

Commonality is also met. The commonality requirement is satisfied where a plaintiff asserts claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 389-90 (2011).

In the instant case, the class claims derive from Plaintiffs' allegations that Defendant disclosed their and other Class Members' Personally Identifiable Information (i.e., personal identifiers and details

8

of the videos they watched) to third parties, including Meta, without their consent. Dkt. 10. This common conduct raises common questions, resolution of which will generate common answers "apt to drive the resolution of the litigation" for the Class as a whole. *Wal-Mart Stores, Inc.,* 564 U.S. at 350 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)).

### 3. Typicality

Typicality is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of the typicality requirement is to ensure that "the interests of the named representative align with the interests of the class." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).

As discussed above in connection with commonality, Plaintiffs' claims arise from the same alleged course of conduct and are based on the same legal theories as the claims of all Settlement Class Members. Plaintiffs allege that Defendant disclosed their personally identifiable information and video-viewing data to third parties without consent through the use of tracking technologies on Defendant's website, in violation of the VPPA. These allegations do not depend on any facts unique to Plaintiffs, but instead concern uniform conduct applicable to the Settlement Class as a whole. Plaintiffs' alleged injuries are likewise typical of those suffered by other Settlement Class Members. Like all Class Members, Plaintiffs allegedly had their personal identifiers and video-viewing information disclosed in the same manner and as part of the same alleged practice. Plaintiffs therefore seek the same relief and advance the same legal claims as the Settlement Class Members they seek to represent.

Because Plaintiffs' claims are based on the same course of conduct and legal theory as those of the Settlement Class, and because Plaintiffs seek the same relief, the typicality requirement of Rule 23(a)(3) is satisfied. *See Valliere v. Tesoro Refin. & Mktg. Co. LLC,* No. 17-cv-00123-JST, 2020 WL 13505042, at *5 (N.D. Cal. June 26, 2020).

### 4. Adequacy

Finally, adequacy, too, is met. The fourth and final Rule 23(a) requirement is "adequacy of representation," Fed. R. Civ. P. 23(a)(4), which has two components: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the

9

representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (2003) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

The proposed Class Representatives' interests in this case are aligned with, and not antagonistic to, the Class they seek to represent. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *4-5 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022); Hammond Decl. ¶ 65. Moreover, the proposed Class Representatives and Settlement Class Members share the same interest in seeking relief based on Defendant's alleged sharing and disclosure of information regarding their private video-viewing activities and in protecting their privacy. *Id.*

The proposed Class Representatives also fully understand their duties as class representatives, will protect the interests of absent Settlement Class Members, and have actively participated in this Action and the Parties' efforts in reaching this Settlement. Hammond Decl. ¶ 64. They have provided Class Counsel with necessary factual information, played an active role in the litigation by frequently communicating with Class Counsel about case developments, communicated with Class Counsel regarding the negotiations of the Settlement Agreement, and reviewed and approved the Settlement Agreement. *Id.*

With respect to Class Counsel, Plaintiffs are represented by qualified and competent counsel who are highly experienced in class actions generally and in consumer privacy litigation, in particular. Proposed Class Counsel have successfully investigated, commenced, and prosecuted many complex class actions, including the instant action. *See* Hammond Decl. ¶¶ 43-55 and Ex. 3 thereto. Proposed Class Counsel have pursued several VPPA cases and are intimately familiar with both the issues involved in prosecuting VPPA claims and the range and nature of settlements reached in such cases. *See Id.* ¶ 43. Despite a significant risk of no recovery, they have devoted substantial time and resources to this case. See *Id.* ¶¶ 58, 60. And their capable representation has been critical in driving this litigation towards settlement.

Accordingly, the adequacy of representation requirement of Rule 23(a) is satisfied.

//

### B.    The Requirements of Rule 23(b)(3) Are Satisfied

Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3) . Accordingly, they must also show: (1) that common questions of law or fact predominate over questions affecting only individual class members; and (2) that a class action is superior to other methods of resolving the controversy. Fed. R. Civ. P. 23(b)(3). Both requirements are easily satisfied by the proposed Class.

### 1.    Common issues of law and fact predominate

The predominance requirement of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 623. This requirement is satisfied in the instant case because the numerous common questions "present a significant aspect of the case and . . . can be resolved for all members of the class in a single adjudication," and, thus, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (citations and quotations omitted).

Here, common issues unquestionably predominate. Because each claim alleged comes from a core set of factual allegations that do not differ between Class Members, the most important issues in this case can all be resolved on a classwide basis. In addition, the Court need not concern itself with questions of the manageability of a trial because the settlement disposes of the need for a trial. The Supreme Court has explained that the "predominance" inquiry is relaxed in the settlement context: "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Prods., Inc.*, 521 U.S. at 620 (discussing manageability, which is a subpart of Rule 23(b)(3) predominance).

### 2.    Class treatment of Plaintiffs' claims is superior

 "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case." *Hanlon,* 150 F.3d at 1023. Rule 23(b)(3) provides four factors that a court must consider in determining whether a class action is superior to other methods of adjudication. These factors are:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

---

11

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "'[T]he purpose of the superiority requirement is to assure that the class is the most efficient and effective means of resolving the controversy.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting 7AA Charles Wright, Arthur Miller & Mary Kay Kane, Federal Practice and Procedure, § 1779 at p. 174 (3d ed. 2005)).

In the instant case, there is no question that class treatment is superior to the litigation of over seventy-five thousand individual claims. First, "[f]rom either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon,* 150 F.3d at 1023. The damages sought by each Settlement Class Member, when weighed against their risks, are not so large as to counsel against certification. *See Smith v. Cardinal Logistics Mgmt. Corp.,* No. 07-cv-02104-SC, 2008 WL 4156364, at *11 (N.D. Cal. Sept. 5, 2008).

Second, there is no other litigation concerning the controversy and no other consumers have indicated an interest in litigating their own claims. Third, there is nothing to suggest that this forum is not the appropriate forum to litigate the case. As discussed above, Willow conceded this court's personal jurisdiction over it and one of two claims is brought under California law.

Finally, the fourth factor, which concerns the difficulty of managing a class action, depends largely on whether Plaintiffs' case "rises and falls [on] common evidence." *In re HighTech Emp. Antitrust Litig.*, 985 F.Supp.2d 1167, 1228 (N.D. Cal. 2013). This factor overlaps with the requirements of commonality, typicality, and predominance, discussed above. Because Plaintiffs easily satisfy those three requirements, the fourth superiority factor weighs in favor of certification.

The resolution of all claims of all Settlement Class Members in a single proceeding also promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties be permitting an issue potentially affecting every class member to be litigated in an economical fashion

12

under Rule 23."). Accordingly, the superiority requirement is satisfied, and the Court should provisionally certify the Settlement Class for purposes of settlement.

## VI.    SETTLEMENT APPROVAL IS WARRANTED

Rule 23 requires the Court to determine whether the Settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess the fairness of a class settlement, Ninth Circuit courts consider factors including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of future litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.[8]

*In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., LLC v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir. 2004)). As explained below, these factors strongly favor preliminary approval.

### A.    The Strengths and Risks of Plaintiffs' Case

Because it is, "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), Defendant is prohibited from "knowingly disclos[ing] personally identifiable information" that is, "information which identifies a person as having requested or obtained specific video materials or services from [it]," § 2710(a)(3), (b)(1) without informed, written consent of the consumer, § 2710(b)(2)(B). Plaintiffs believe that the evidence would show that Defendant made impermissible disclosures without the written consent of Class Members and without any potential authorization under state or federal law.

Defendant, however, argued that it did not violate the VPPA because it did not knowingly disclose its subscribers' PII to Meta, denied that the disclosed information – URLs and cookie information – constitutes PII, and asserted that Plaintiffs and other Class Members agreed to the alleged tracking. Dkt 25 at 9-15.  Although the Parties had fully briefed these arguments, raised in Defendant's Motion to Dismiss, the Court had not ruled on them at the time the parties settled.  Even if Plaintiffs

---

[8] This final factor cannot be addressed now because Class Members have not yet had the chance to react.

1    prevailed on these issues at the pleading stage, Defendant would have likely raised these arguments

2    again at summary adjudication and at trial.  In addition, Defendant could argue that the information

3    disclosed was insufficient to identify individual subscribers and also raise this issue at summary

4    adjudication and at trial.  Hammond Decl. ¶ 31.  These defenses depend on highly technical disputes

5    about website architecture, data flows, and functionality of third-party tracking tools.  Resolving those

6    issues would require Plaintiffs to present and explain complex computer-science concepts to a lay jury

7    and to prevail in a contest of competing expert testimony, creating significant uncertainty at summary

8    judgment and trial.  *Id.*  Although, Plaintiffs believe they could overcome these challenges (and certify

9    the class), they recognize that they pose substantive risk to recovery on this claim.  *Id.* ¶ 32.

10        Even if Plaintiffs were to prevail on liability and class certification, damages under the VPPA

11    remain uncertain and contested. Although VPPA authorizes damages of $2,500 per violation (*see* 18

12    U.S.C. § 2710(c)(2)(A)), which based on 75,830 Class Members would amount to $189,575,000,[9]

13    Plaintiffs expect that such a figure would be subject to a due process challenge. Hammond Decl. ¶ 33.

14    The Ninth Circuit recently held in *Wakefield v. ViSalus, Inc.* that "aggregated statutory damages . . . are

15    subject to constitutional limitation in extreme situations – that is, when they are 'wholly disproportioned'

16    and 'obviously unreasonable' in relation to the goals of the statute and the conduct the statute prohibits."

17    51 F. 4th 1109, 1123 (9th Cir. 2022) (quoting *St. Louis, I.M. & S. Ry. Co. v. Williams*, 251 U.S. 63, 67

18    (1919)); *see also In re Facebook, Inc. Internet Tracking Litigation*, No. 22-16903, 2024 WL 700985,

19    *1 (9th Cir. Feb. 21, 2024) ("With 124 million potentially affected Facebook users in the United States,

20    the district court properly rejected the $1.24 trillion in statutory damages proposed by Objectors as an

21    unreasonable baseline that would violate due process."). As a court in this district concluded in another

22    class settlement involving statutory damages, "[g]iven the class size, it is not plausible that class

23    members could recover the full amount of the statutory penalties in any event." *Fraley v. Facebook,

24    Inc.*, 966 F. Supp. 2d 939, 944 (N.D. Cal. 2013), *aff'd sub nom. Fraley v. Batman*, 638 F. App'x 594

25

26    ─────────────────

27    [9] Plaintiffs' UCL claim is derivative of his other claims. Moreover, given the strengths of the VPPA claim, Plaintiffs think that their UCL claim would likely only entitle them to the same or similar monetary relief that they would obtain pursuant to those claims. Accordingly, Plaintiffs ascribes *de minimis* value to this claim. Hammond Decl. ¶ 33 n.8.

28

1  (9th Cir. 2016) ; *In re Hulu Priv. Litig.*, 2014 WL 2758598, at *23 (N.D. Cal. June 17, 2014) (explaining
2  that the aggregation of VPPA statutory damages in a class action may raise due process concerns).

3       In addition, Defendant could also argue that damages under the VPPA are discretionary. *See* 18
4  U.S.C. § 2710(c)(2)(A) (A "court *may* award actual damages but not less than liquidated damages in an
5  amount of $2,500." (emphasis added)). Hammond Decl. ¶ 34.

6       Given these uncertainties—combined with the cost, delay, and risk inherent in continued
7  litigation—the prospect of achieving a prompt, certain recovery through settlement represents a
8  substantial and tangible benefit to the class. And, the Class Members and prospective customers will
9  also benefit from Defendant's removal of the Meta Pixel from its website, its agreement to remain in
10 compliance with the VPPA, and its implementation of a pop-up notification on its desktop website
11 regarding cookies and other tracking technologies. *See* SA § ¶¶ 81-82. *See Linney v. Cellular Alaska
12 P'ship,* 151 F.3d 1234, 1242 (9th Cir. 2017) (settlement was reasonable given the significant risks of
13 trial despite amounting to a fraction of the potential recovery); *Schaffer v. Litton Loan Servicing, LP,*
14 No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012) ("[e]stimates of
15 what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the
16 expense of litigating the case, and the expected delay in recovery (often measured in years).").

17     **B.**    **Further Litigation Would be Risky, Expensive, Complex, and Lengthy**

18      As detailed above, there are a number of risks which, combined, mean that there is no certainty
19 that Plaintiffs and Settlement Class Members would recover anything from this case should it proceed
20 in litigation. Moreover, even were Plaintiffs and a certified class to prevail at trial, Defendant would
21 likely appeal. Thus, absent this Settlement, this Action could have taken many years to be finally
22 resolved. Hammond Decl. ¶ 36.

23     **C.**    **The Risks Associated with Certifying the Class and Maintaining the Case as a Class**
24             **Action Through Trial**

25      In assessing the likelihood that the Class proposed in Plaintiffs' First Amended Complaint would
26 be certified by this Court and then upheld on appeal, Plaintiffs understand that Defendant is prepared to
27 present arguments that individualized inquiries abound. For example, Defendant argued that not all
28 Willow TV users necessarily have Facebook accounts, and not all would have used Willow TV on the

15

same device they use to access Facebook and therefore would not have cookies on their devices to match the website user to their Facebook account.  Hammond Decl. ¶ 35. Defendant also could have argued that certain browsers and certain settings on social media prevent the Meta Pixel from sending any information to Meta or limit the information sent, and determining which Class Members used those browsers and settings would require individualized inquiries.  *Id.* Any adverse ruling on these issues could dramatically reduce the size of the class, or preclude classwide relief altogether.

Notably, however, while these individualized issues may have weighed against certifying the proposed Class and/or some of Plaintiffs' claims for litigation purposes, they do not weigh against certification of the Class and claims for settlement purposes. "A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en banc); *see also Jabbari v. Farmer*, 965 F.3d 1001, 1005–06 (2020).

### D.    The Relief Offered in the Settlement is Fair, Adequate, and Reasonable

The Settlement Agreement creates a cash settlement fund of $850,000. The monetary relief afforded to the Settlement Class Members is fair, adequate, and reasonable.

The gross per-Class Member share of the Settlement Fund will be approximately $11.21. Hammond Decl. ¶ 5. The net per-Class Member share will be approximately $6.44 *Id*. Assuming a claims rate of 3% to 5%, the average share for a Class Member who submits a claim will be approximately $128.72 and $214.54 net. *Id.*  This relief is consistent with – and at the higher end of – that of other VPPA class action settlements. *See, e.g., Stark v. Patreon, Inc.*, No. 3:22-cv-03131 (N.D. Cal. Jan. 30, 2025), ECF Nos. 204, 204-2 ($0.89 gross per-Class Member, and approximately $40.35 per claimant based on a 1.29% claims rate); *Ade, et al. v. Viki, Inc.*, No. 23-cv-02161-RFL-LB (N.D. Cal. October 27, 2025) ($3.05 gross per-Class Member, and approximately $127.70 per claimant based on claim rate of approximately 1.59%); *Vela v. AMC Networks, Inc.*, No. 1:23-cv-02524 (S.D.N.Y. May 2, 2024), ECF No. 59 ($1.12 gross per-Class Member, and approximately $9 per claimant based on a claim rate of approximately 7.15%);  *Fiorentino v. FloSports, Inc.*, No. 1:22-cv-11502 (D. Mass. Feb. 16, 2024), ECF No. 72 ($3.34 gross per-Class Member, and approximately $87 per claimant, based on a 2.34% claims rate); *Beltran, Jr. v. Sony Pictures Entertainment Inc.* ("*CrunchyRoll*"), No. 1:22-cv-

16

04858 (N.D. Ill. Dec. 7, 2023), ECF No. 52 ($0.82 gross per-Class Member, and approximately $30.94 per claimant based on a claim rate of approximately 1.7%); *see also Foster v. Adams & Assocs., Inc.,* 2021 WL 4924849, at *7 (N.D. Cal. Oct. 21, 2021) (the fact that the settlement was "consistent" with settlements in other similar cases favored approval). A table summarizing details of these and other comparable VPPA class action settlements is attached as Exhibit 2 to the Hammond Declaration.

In addition to monetary relief, Defendant has removed the Meta Pixel from its website and has agreed to remain in compliance with the VPPA. Defendant has also implemented a pop-up notification on its desktop website regarding cookies and other tracking technologies. SA ¶¶ 81-82. This is similar to the non-monetary relief achieved in other VPPA settlements. *See, e.g. Stark v. Patreon,* No. 22-cv-03131, Dkt. 176-1 at 8-9; *Ade, et al. v. Viki, Inc.,* No. 23-cv-02161-RFL-LB, Dkt. 92-1 at 8.

Thus, the relief provided by the settlement is fair and adequate and directly addresses the harm suffered by the Class and adequately addresses their injuries.

**E.    The Settlement is Informed by Sufficient Investigation and Informal Discovery to Permit an Informed Decision**

"In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, 'formal discovery is not a necessary ticket to the bargaining table.'" *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 257 (N.D. Cal. 2015) (quoting *Linney v. Cellular Alaska P'ship,* 151 F.3d at 1239). "Rather, the court's focus is on whether 'the parties carefully investigated the claims before reaching a resolution.'" *Id.* (quoting *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) (citation omitted)).

As described in detail in the Hammond Declaration, the Settlement was reached on a well-developed factual and legal record following arm's-length negotiations between experienced counsel. Settlement Class Counsel engaged in extensive factual and legal research, investigation, and analysis of the Settlement Class's claims before filing Plaintiffs' initial complaint. The Parties participated in two mediations; Defendant's motion to dismiss was fully briefed and partially ruled upon; Plaintiffs conducted extensive factual and technical investigation of Defendant's website, including consultation with a computer science expert regarding the Meta Pixel and other third-party tracking tools; and the Parties engaged in informal discovery. Hammond Decl. ¶¶ 6-19. Accordingly, the Parties possessed a

17

clear understanding of the strengths and weaknesses of Plaintiffs' claims and the attendant risks of continued litigation, enabling them to make an informed decision regarding the adequacy and desirability of the Settlement.

### F.    Counsel Believes the Settlement is an Excellent Result

Courts recognize that the opinion of experienced counsel supporting settlement after arm's length negotiations is entitled to considerable weight. *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd, 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

As demonstrated in Class Counsel's declaration, Class Counsel have extensive experience litigating and settling complex consumer class actions, including those concerning data privacy and the use of tracking tools in particular. *See* Hammond Decl. ¶¶ 43, 44, 46 and Ex. 3 thereto.  Based on their experience and their work performed in this case, it is Class Counsel's opinion that the Settlement represents an excellent result and is in the best interest of the Class, particularly given the risks, delay, and inherent uncertainties of continued litigation. *Id.* ¶¶ 6, 42.  Plaintiffs' Counsel's opinion is informed by the extensive investigation into the Settlement Class's claims prior to filing the instant case, continued investigation throughout the case, informal discovery obtained from Defendant, discussions that took place during settlement negotiations and the opinion of the mediator (a retired district court judge), and expert's investigation of Defendant's website. *Id.* ¶ 6.

### G.    Governmental Participation is Not at Issue Here

This factor is not at issue because there is no government participation in this case. *Bertoia v. Randstad US, L.P.*, No. 15-cv-03646-EMC, 2017 WL 1278758, at *9 (N.D. Cal. Apr. 6, 2017); *see also Martin v. Sysco Corp.*, No. 16-cv-00990-DAD-SAB, 2019 WL 3253878, at *6 (E.D. Cal. July 19, 2019).

### H.    The Settlement Also Satisfies the Bluetooth Factors

Prior to class certification, class settlements must withstand a "higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011). The Court must be satisfied that "the settlement is not the product of collusion among the negotiating parties." *Id.* at 946-47. The Ninth Circuit has identified three "signs" of possible

18

collusion:

> (1) "when counsel receive[s] a disproportionate distribution of the settlement"; (2) "when the parties negotiate a 'clear sailing arrangement,'" under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class.

*Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (quoting *In re Bluetooth*, 654 F.3d at 947). Evaluation of the *Bluetooth* factors assists the Court in determining whether Plaintiffs' Counsel have "allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth*, 654 F.3d at 947. Here, this evaluation militates strongly in favor of granting preliminary approval.

First, the settlement does not provide that Plaintiffs' Counsel should "receive a disproportionate distribution of the settlement." *In re Bluetooth*, 654 F.3d at 947. Rather, as set forth in the Settlement Agreement, proposed Class Counsel may request no more than 33% of the Settlement Fund. SA ¶ 54. While this is higher than the 25% benchmark, the requested fee represents a negative multiplier to Plaintiffs' Counsel's current lodestar, which will increase before this case is concluded. Second, the Agreement does not contain a clear sailing provision. *Id.* ¶¶ 54-55. The Agreement provides that Plaintiffs' Counsel may seek fees of up to 33%, but Defendant has not agreed that such fees are appropriate and has not agreed not to challenge any amount of attorneys' fees sought by Plaintiffs. *See Id.* And, third, there is no reversion of any amount of unawarded fees to the Defendant. *See In re Bluetooth*, 654 F.3d at 947. The Settlement Agreement establishes that the Settlement Fund is non-reversionary whereby none of the amount, including any attorneys' fees and costs sought by Settlement Class Counsel but not awarded by the Court, will revert to Defendant. SA ¶ 67.

## VII.   THE PROPOSED NOTICE PROGRAM, SETTLEMENT ADMINISTRATOR, AND PROCESS FOR CLAIMS, OPT-OUTS, AND OBJECTIONS SHOULD BE APPROVED

### A.   The Proposed Notice Plan

#### 1.   *Class Notice*

The proposed notice plan is described in the Settlement Agreement at ¶ 59. It will include direct

email notice (followed, where necessary, by a reminder notice),[10] a settlement website, and a toll-free telephone number. *Id.,* ¶ 59; Simpluris Decl. ¶ 20. The Settlement Administrator estimates that the email notice program ("direct notice") will likely reach approximately 95% or more of the Settlement Class. Simpluris Decl. ¶ 22. This is consistent with other court-approved, best-practicable notice programs and far exceeds the reach characterized as the "norm" and a "high percentage" by the Federal Judicial Center Guidelines. *See Edwards v. Nat'l Milk Producers Fed'n,* No. 11-CV-04766-JSW, 2017 WL 3623734, at *4 (N.D. Cal. June 26, 2017) (citing Federal Judicial Center, *Judge's Class Action Notice and Claims Process Checklist and Plain Language Guide* 2010 ("The lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%.").

As this District's guidance recommends, the draft notices include contact information for class counsel; the address for the settlement website (which will contain a summary of the Settlement; enable online Claim Form filing; allow Settlement Class Members to contact the Settlement Administrator with any questions or changes of address; provide notice of important dates (such as the Final Approval Hearing, Claims Submission Deadline, Objection Deadline, Opt-Out Deadline); provide Settlement Class Members who file Claim Forms an online the opportunity to select an electronic payment method (including PayPal, Venmo, Zelle) or payment by check; and, contain relevant case documents including the Operative Complaint, the Settlement Agreement, the Long-Form Notice, Plaintiffs' motion for preliminary approval, and the Preliminary Approval Order); the date and time of the final approval hearing, clearly stating that the date may change without further notices to the Classes; and a note to Class Members to check the settlement website or the court docket to confirm the date. SA, Ex. A (Email Notice), Ex. B (Notice Posted on Settlement Website).

### 2. CAFA Notice

Pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 the Settlement Administrator will provide notice to the Attorneys General of each state in which Class Members reside, the Attorney

---

[10] No Notices will be mailed because Defendant uses a third-party payment processor and does not have in its possession mailing addresses for the Class Members. Hammond Decl. ¶ 61.

General of the United States, and any other required government officials, within ten days of the filing of the Settlement Agreement. SA. ¶ 65.

### B.    The Settlement Administrator

Plaintiffs propose Simpluris, Inc. ("Simpluris") as the settlement administrator. Hammond Decl. ¶ 61; Proposed Order (filed concurrently herewith). Plaintiffs obtained competing bids from three prospective settlement administrators. Hammond Decl. ¶ 61. They each concerned generally similar notice and claims processes to the one the parties ultimately selected. *Id.* Plaintiffs' Counsel evaluated each proposal and ultimately selected Simpluris based on its competitive bid and experience administering similar settlements. *Id.* ¶ 62.

Simpluris has experience as an appointed settlement administrator in large class-action settlements, including those involving privacy concerns. Simpluris Decl. ¶ 3. Simpluris maintains robust data security standards, which comply with industry-recognized standards, and strict procedures for handling class data, which are of critical importance to the Parties. Simpluris Decl. ¶¶ 4-7, 16-17. Simpluris also maintains a comprehensive insurance program. *Id.* ¶ 18.

Simpluris has estimated the costs of issuing notice and administering the Settlement (assuming two rounds of distribution) as approximately $38,028. Simpluris Decl. ¶ 19. These costs will be paid out of the Settlement Fund. Settlement Agreement ¶ 19. The estimated costs of notice and administration are reasonable when compared to the value of the Settlement and in light of the size of the Settlement Classes. The estimated costs are less than 5% of the Settlement Fund.

### C.    Opt-outs and Objections: Timeline and Instructions

Settlement Class Members have 60 days from the date the Notice is mailed to opt out of or object to the Settlement. Plaintiffs' Counsel will also file the motion for fees and costs at least 14 days prior to the deadline to objection. SA ¶¶ 23, 25; Proposed Order, filed concurrently herewith. Instructions for opting-out and objecting are in plain language and clearly prompt those who wish to opt-out or to object to provide the specific information each action requires. SA, Exs. A & B. The notice clearly informs class members of the opt-out deadline and how to opt out, and requires that they supply only the information needed to opt out of the settlement. *Id.* Exs. B & C. Similarly, the notice informs class members of the objection deadline and instructs them to send their written objections to the Court, and

21

clearly identifies the objection deadline. *Id.*

### D.    The Claims Process

#### 1.    *The Claim Form*

It is necessary to require submission of a claim form in order for a Settlement Class Member to receive a monetary payment because Defendant does not have mailing addresses of the Settlement Class Members.  Hammond Decl. ¶ 3 n.1. Defendant uses a third-party payment processor, and it is that payment processor, not Defendant, that collects and maintains addresses as part of collecting billing information.  *Id.* ¶ 3 n.1. Thus, there is no way to mail checks to the Settlement Class Members.  In addition, the use of a claims form, and the corresponding expected use of electronic means of receiving payment by the majority of Authorized Claimants will help reduce the likelihood of fraud in the receipt of settlement funds, and will significantly reduce the costs of administration. *Id.*

#### 2.    *The Estimated Claim Rate*

Plaintiffs' Counsel estimates that the claims rate in this case will be between 3% and 5%. Hammond Decl. ¶ 5. Plaintiffs' Counsel considers this to be a reasonable estimate based on its experience in similar settlements. *See* Exhibit 2 to Hammond Decl. One broad analysis of 149 consumer class actions conducted by the Federal Trade Commission concluded that "[a]cross all cases in our sample requiring a claims process, the median calculated claims rate was 9%, and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%." *See* Fed. Trade Comm'n, Consumers & Class Actions: A Retrospective & Analysis of Settlement Campaigns, p. 11 (Sept. 2019) ("FTC Report").[11] And, in the instant case, the Settlement Administrator will send a reminder notice 30 days prior to the Claims Deadline and a second reminder notice 7 days prior to the Claims Deadline, to all Settlement Class Members for whom a valid email address is available in the Class List. SA ¶ 59(c).

## VIII.   OTHER CASES AFFECTED

Plaintiffs are not aware of any other pending case that would be affected by the proposed Settlement.

---

[11]  This report is available at https://www.ftc.gov/system/files/documents/reports/consumers-class-actions-retrospective-analysis-settlement-campaigns/class_action_fairness_report_0.pdf (last accessed January 14, 2026).

## IX. THE PROPOSED FINAL APPROVAL HEARING SCHEDULE

Plaintiffs' [Proposed] Order Granting Preliminary Approval of Class Action Settlement filed herewith, includes the following proposed schedule for the approval process:

| EVENT | PROPOSED DEADLINE |
| --- | --- |
| Preliminary Approval Order | TBD |
| Class List due to Administrator | 14 days after entry of the Preliminary Approval Order |
| Notice Date | Not later than 30 days after entry of the Preliminary Approval Order |
| Motion for Attorneys' Fees | 35 days before the Objection/Opt Out Deadline |
| Opposition to Motion for Attorneys' Fees | No more than 30 days after the Motion for Attorneys' Fees |
| Objection Deadline | 60 days after Notice Date |
| Reply in Support of Motion for Attorneys' Fees | 14 days after Opposition due date |
| Opt-Out Deadline | 60 days after Notice Date |
| Claim Deadline | 60 days after Notice Date |
| Motion for Final Approval | 95 days after Notice Date |
| Reply in Support of Final Approval Motion and Update Regarding Notice Administration | 14 days after Motion for Final Approval due date |
| Final Approval Hearing | TBD |

## X. CONCLUSION

For these reasons, Plaintiffs respectfully request that their motion for preliminary approval of the Parties' class action Settlement be granted.

DATED:  January 16, 2026                              Respectfully submitted,


                                                      /s/ Julian Hammond
                                                      Julian Hammond
                                                      *Attorneys for Plaintiffs and Proposed Class Counsel*