UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARI KISHORE, et al., | Case No. 23-cv-03594-HSG |
| Plaintiffs, | **ORDER GRANTING PRELIMINARY APPROVAL** |
| v. | Re: Dkt. No. 59 |
| TIMES INTERNET (UK) LTD., | |
| Defendant. | |

Pending before the Court is Plaintiffs' unopposed motion for preliminary approval of class action settlement. *See* Dkt. No. 59 ("Mot."). The Court held a hearing on the motion on March 26, 2026. Dkt. No. 70. For the reasons detailed below, the Court **GRANTS** the motion.

## I.    BACKGROUND

### A.    Factual Allegations

This is a putative class action lawsuit in which Plaintiffs Hari Kishore and Brett Walker (collectively, "Plaintiffs") allege that Defendant Times Internet (UK) Ltd. d/b/a/ Willow TV ("Willow" or "Defendant"), a video subscription service, purposefully discloses its customers' viewing choices to Meta Platforms, Inc. ("Meta") without Plaintiffs' or the putative Class Members' knowledge or authorization, and by using pieces of tracking software, including the Meta Pixel. Compl., ¶ 4. Specifically, Plaintiffs allege that Willow sent to Meta the full titles of the videos Plaintiffs and other putative Class Members watched on Willow, along with unique information that would allow them to be easily identified by Meta and the public. *Id.*, ¶ 5. Plaintiffs allege that not only does Willow fail to seek specific consent from its users to extract their data, but Willow also affirmatively promises users that it does not provide personally identifiable information to third party websites without users' consent. *Id.*, ¶ 4.

United States District Court
Northern District of California

Plaintiffs filed their First Amended Complaint on August 2, 2023, bringing two claims: first, for violation of the Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.*, on behalf of Plaintiffs and the Nationwide Class; and second, for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, on behalf of Plaintiffs and the nationwide class (or, in the alternative, on behalf of Plaintiffs and the California Subclass).  Defendant filed a motion to dismiss on January 30, 2024 (Dkt. No. 25), which was withdrawn on March 18, 2025 pending mediation (Dkt. No. 46).

### B. Settlement Agreement

On May 8, 2025, the Parties participated in a mediation with Judge Freda Wolfson (ret.) and reached an agreement in principle. Dkt. Nos. 49, 50.  The Parties entered into a settlement agreement. *See* Ex. 1 ("Settlement Agreement" or "SA") to Declaration of Julian Hammond ("Hammond Decl."), Dkt. No. 59-1.  The key terms are as follows:

Settlement Class:  The Settlement Class is defined as:  All persons in the United States who subscribed to Willow TV and watched pre-recorded videos on willow.tv at any time during the Class Period.  SA, ¶ 36.

Settlement Class Representatives:  The Settlement Class Representatives are defined as the Plaintiffs.  SA, ¶ 39.

Settlement Class Member(s):  The Settlement Class Member(s) are defined as any and all persons who fall within the definitions of the Settlement Class.  SA, ¶ 38.

Settlement Class Counsel:  The Settlement Class Counsel is defined as the law firm of HammondLaw, P.C.  SA, ¶ 37.

Class Period:  The Class Period is defined as:  The time period between July 20, 2021 and September 22, 2023.  SA, ¶ 13.

Qualified Settlement Fund:  The Qualified Settlement Fund is defined as the non-reversionary cash settlement common fund for the benefit of the Settlement Class in the amount of Eight Hundred and Fifty Thousand U.S. Dollars ($850,000.00).  SA, ¶ 28.

Net Settlement Fund:  The Net Settlement Fund is defined as the Qualified Settlement Fund minus (i) the Attorneys' Fees and Expenses Award; (ii) Service Awards; (iii) Notice and

United States District Court
Northern District of California

Administration Costs; and (iv) such other costs, expenses, or amounts as may be awarded or allowed by the Court.  SA, ¶ 19.

Service Award(s):  The Service Award(s) are defined as the incentive/service awards for the Settlement Class Representatives as approved by the Court.  SA, ¶ 33.

Attorneys' Fees and Expenses Awards:  The Attorneys' Fees and Expenses Award is defined as such funds as may be awarded by the Court to Settlement Class Counsel to compensate Settlement Class Counsel for its fees, costs, and expenses in connection with this action and the Settlement.  SA, ¶ 8.

Notice and Administration Costs:  The Notice and Administration Costs are defined as the reasonable and necessary (i) costs, fees, and expenses that are incurred in connection with providing the Notice of Proposed Settlement of Class Action to the Settlement Class; and (ii) costs, fees, and expenses that are incurred in connection with administering the claims process and allocating and distributing payments to the Settlement Class Members.  SA, ¶ 21.

Notice Date:  The Notice Date is defined as the date upon which the Class Notice is first disseminated, which shall be no later than thirty (30) days after the Preliminary Approval Order is issued.

Settlement Benefits:  The Settlement Agreement provides for two kinds of monetary compensation to the Settlement Class.  First, each Settlement Class Representative shall receive a Service Award of up to $7,500.00 to be paid from the Qualified Settlement Fund.  SA, ¶ 56. Second, all Settlement Class Members with an approved claim will be entitled to a pro rata portion of the Net Settlement Fund based on the estimated class size of 75,830 members, by electronic payment method approved by the Settlement Administrator or a check, based on the election made by each Settlement Class Member, after deducting the Notice and Administration Costs, Attorneys' Fees and Expenses Awards, Service Awards, and any other costs, expenses, or amounts permitted or awarded by the Court.  SA, ¶ 68.

If more than $100,000.00 remains in the Net Settlement Fund after completion of the initial distribution of payments to the Settlement Class Members and expiration of the 90-day period after the date of issuance, the Settlement Administrator shall conduct a secondary

3

distribution of the remaining funds, minus administrative costs, on a pro rata basis to those Settlement Class Members who received an initial settlement payment that was successfully delivered and not returned or canceled. SA, ¶ 71. If less than $100,000.01 remains in the in the Net Settlement Fund after the initial distribution of payments to the Settlement Class Members and expiration of the 90-day period after the date of issuance, or if any residual funds remain after the secondary distribution, those funds shall revert to the *cy pres* beneficiary mutually agreed to by the Parties, the Electronic Frontier Foundation, a 501(c)(3) nonprofit organization. *See* SA, ¶ 72; Joint Notice of Proposed Cy Pres Recipient, Dkt. No 72.[1]

Further, Defendant has removed the Meta Pixel from its website, and has no present plans to reinstall or otherwise reenable the Meta Pixel at this time. SA, ¶ 81(b). Defendant affirms that it will remain in compliance with the VPPA. SA, ¶ 81(c). Defendant has implemented a pop-up notification on its desktop website regarding cookies and other tracking technologies. SA, ¶ 82(a)). Defendant has also revised the language next to the checkbox on its subscription page so that the box is no longer pre-checked, and the accompanying text has been updated to read: "By checking this box and clicking 'REGISTER,' I confirm that I have read and agree to Willow TV's updated Terms of Service and acknowledge the Privacy Policy[.]" SA, ¶ 82(b).

Opt-Out Procedure:  Settlement Class Members must file in writing with the Settlement Administrator a request to opt out of the Settlement Class postmarked by the Opt-Out Deadline, which is 60 days after the Notice Date.

## II.    PROVISIONAL CLASS CERTIFICATION

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *See id.* at 349. Second, a plaintiff must establish that

---

[1] The Court preliminarily finds the *cy pres* recipient identified by the parties in their supplemental filing to be appropriate. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (requiring "a driving nexus between the plaintiff class and the *cy pres* beneficiaries").

United States District Court
Northern District of California

at least one of the bases for certification under Rule 23(b) is met.  Where a plaintiff seeks to certify a class under Rule 23(b)(2), it must show that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  And where a plaintiff seeks to certify a class under Rule 23(b)(3), it must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019).  When deciding whether to certify a litigation class, a district court must consider manageability at trial.  *Id.*  However, this concern is not present when certifying a settlement class.  *Id.* at 556–57.  In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses."  *Id.* at 557.

### A.  Rule 23(a) Certification

The Court finds that all the requirements of Rule 23(a) are met for the Proposed Settlement Class:

- **Numerosity.**  Joinder of the 75,830 estimated Settlement Class Members nationwide would be impracticable.  *See* Mot. at 8.  This is sufficiently numerous for certification.

- **Commonality.**  Common questions of law and fact include whether Defendant disclosed Plaintiffs' and the Settlement Class Members' Personally Identifiable Information (i.e., personal identifiers and details of the videos they watched) to third parties, including Meta, without their consent.  *See* Mot. at 8-9.

- **Typicality.**  Plaintiffs' claims are both factually and legally similar to those of the putative Settlement Class because, like Plaintiffs, all Settlement Class Members allegedly had their personal identifiers and video-viewing information disclosed in the same manner and as part of the same alleged practice, through the use of tracking technologies on Defendant's website.  *See* Mot. at 9.

5

- **Adequacy of Representation.**  The Court is unaware of any actual conflicts of interest in this matter, and no evidence in the record suggests that either Plaintiffs or counsel have a conflict with other Settlement Class Members.  Plaintiffs' counsel have been appointed class counsel in numerous federal and state class actions.  *See* Declaration of Julian Hammond ("Hammond Decl."), ¶¶ 43-45, 50-53, Dkt. No. 59-1.  The Court finds that proposed Class Counsel and Plaintiffs have prosecuted this action vigorously on behalf of the putative Settlement Class to date and will continue to do so.

## B.  Rule 23(b)(3)

The Court also finds that the predominance and superiority requirements of Rule 23(b)(3) are met for the Proposed Settlement Class:

- **Predominance.**  The Court concludes that common questions predominate here because the common question of Defendant disclosed Plaintiffs' and the Settlement Class Members' Personally Identifiable Information (i.e., personal identifiers and details of the videos they watched) to third parties, including Meta, without their consent, and thus violated the VPPA, predominates over any individual questions.

- **Superiority.**  A class action in this case enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them. *Cf. Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) (finding superiority where named plaintiff's claim was for less than $10,000).  Further, this forum is appropriate, and manageability is not a relevant consideration in the settlement approval context.

## C.  Class Representative and Class Counsel

Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as Settlement Class Representatives. When a court certifies a class, it must also appoint class counsel.  Fed. R. Civ. P. 23(c)(1)(B). Counsel have investigated and litigated this case throughout its existence and have submitted a declaration detailing their expertise in representing plaintiffs in complex consumer class actions, including data privacy class actions.  *See* Hammond Decl. ¶¶ 43-45, 50-53 & Ex. 3 (law firm

resume). Accordingly, the Court appoints HammondLaw LLP as Class Counsel. *See* Fed. R. Civ. P. 23(g)(1)(A) (listing factors courts must consider when appointing class counsel).

### I.  PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court considers whether it should preliminarily approve the parties' class action settlement.

#### A.  Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted). Such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Roes*, 944 F.3d at 1049 (quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement:  (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class;

United States District Court
Northern District of California

(3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (quotation and citation omitted).

## B. Analysis

### i. Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id.*

Plaintiffs will request up to $280,500 in attorneys' fees, which Plaintiffs state is a 0.89 multiplier of the Settlement Class Counsel's current lodestar. Mot. at 7. The Settlement Agreement also provides that Settlement Class Counsel may apply to the Court for reimbursement of actual litigation costs and expenses, which currently total $28,426.03. SA, ¶ 54; Hammond Decl., ¶ 60. The Parties agreed to these attorneys' fees and costs in mediation after agreeing on monetary and injunctive relief. Mot. at 4; SA ¶ 54. Defendant has agreed to pay all valid claims to the Settlement Class Members, Service Awards to the Settlement Class Representatives approved by the Court, Attorneys' Fees and Expenses Award (in the amount determined by the Court), and Notice and Administration Costs, from the Qualified Settlement Fund, which will total $850,000.00. SA, ¶ 45. Defendant does not agree to any payment beyond the amount of the Qualified Settlement Fund. *Id.* Further, the Qualified Settlement Fund is non-reversionary. SA, ¶ 28. Any remaining money in the Qualified Settlement Fund after the deduction of attorneys' fees, costs, expenses, and service awards, the initial distribution of payments to the Settlement Class Members, and the expiration of the 90-day period after the date of issuance will be allocated in one of two ways: (1) If more than $100,000.00 remains, the remainder shall be redistributed to the

Settlement Class, minus administrative costs, on a pro rata basis to those Settlement Class Members who received an initial settlement payment that was successfully delivered and not returned or canceled (SA, ¶ 71); or (2) if less than $100,000.01 remains, the remainder shall revert to the *cy pres* beneficiary mutually agreed to by the Parties, the Electronic Frontier Foundation, a 501(c)(3) nonprofit organization. *See* SA, ¶ 72; *see also* Joint Notice of Proposed Cy Pres Recipient, Dkt. No 72. Any residual funds remaining after the secondary distribution shall also revert to the *cy pres* beneficiary. SA, ¶ 72. At no point is there the reversion of any amount of unawarded fees to the Defendant. Mot. at 19.

Whenever a settlement agreement contains a clear sailing provision, the Court "has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."[2] *In re Bluetooth Headset*, 654 F.3d at 948. Here, the Settlement Agreement provides that the Settlement Class Counsel may seek fees of up to 33%. But Defendant has not agreed that such fees are appropriate, and has not agreed not to oppose Plaintiffs' attorneys' fees request. *See* Mot. at 19. Rather, the Settlement Agreement provides that "Defendant shall not object to the Attorneys' Fees and Expenses Award that *the Court* deems appropriate," *see* SA, ¶ 54 (emphasis added), and that "Defendant will not oppose the amount *the Court* deems appropriate" for Service Awards to the Class Representatives, *see* SA, ¶¶ 56-57 (emphasis added). Moreover, the Parties represent that the Settlement Agreement is "a result of arm's length negotiations" (Hammond Decl., ¶ 6; Mot. at 17), and the Settlement Agreement was facilitated through extensive discussions overseen by a neutral mediator, thereby reducing the likelihood of fraud or collusion. Hammond Decl., ¶¶ 6, 16-19; *see Estorga v. Santa Clara Valley Transp. Auth.*, No. 16-CV-02668-BLF, 2020 WL 7319356, at *6 (N.D. Cal. Dec. 11, 2020).

Nevertheless, the Court is cognizant of its obligation to review class fee awards with rigor, and at the final approval stage the Court will scrutinize the circumstances and determine what fee award is appropriate in this case. The Court will independently assess the reasonableness of

---

[2] A "clear sailing agreement" is one "wherein the defendant agrees not to oppose a petition for a fee award up to a specified maximum value." *In re Bluetooth Headset*, 654 F.3d at 940 n.6.

United States District Court
Northern District of California

Plaintiff's fee request, evaluating Plaintiff's billing records, the benefits obtained for the class, and the risks of further litigation. *See Hanlon*, 150 F.3d at 1029.

### ii.    Preferential Treatment

The Court next considers whether the Settlement Agreement provides preferential treatment to any class members. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth Headset*, 654 F.3d at 947. Under Rule 23(e), the Settlement Agreement must "treat class members equitably relative to each other." Fed. R. Civ. P. 23. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (quotations omitted).

The Court finds that the Settlement Agreement satisfies this standard for purposes of preliminary approval. The Settlement Agreement authorizes the Settlement Class Counsel to apply for an incentive award for the Settlement Class Representatives of up to $7,500 each. *Id.* ¶ 56. The Court will ultimately determine whether the Settlement Class Representatives are entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate this award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (quotation omitted). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Since the proposed incentive award here is not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d

at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

### iii.   Settlement Within Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval.  To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8 (quotation omitted).  However, "it is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Foster v. Adams and Associates, Inc.*, No. 18-cv-02723-JSC, 2021 WL 4924849, at *6 (N.D. Cal. Oct. 21, 2021).  This requires the Court to evaluate the strength of Plaintiffs' case.

Here, the Settlement Agreement provides that Defendant will pay $850,000 into a Qualified Settlement Fund.  SA, ¶ 45.  If Plaintiffs prevailed on their VPPA claims, all class members would receive a minimum of $2,500 per person in statutory damages.  Mot. at 5 (citing 18 U.S.C. § 2710(c)(2)).  Given that the putative class contains 75,830 members, VPPA damages alone would amount to $189,575,000.  Mot. at 14.  But that amount could well be found to be "obviously unreasonable in relation to the goals of the statute and the conduct the statute prohibits." *Wakefield v. ViSalus, Inc.*, 51 F. 4th 1109, 1123 (9th Cir. 2022) ("aggregated statutory damages" are subject to constitutional due process limits "when they are 'wholly disproportioned' and 'obviously unreasonable' in relation to the goals of the statute and the conduct the statute prohibits"); *see also In re Facebook, Inc. Internet Tracking Litig.*, 2024 WL 700985, at *1 (9th Cir. Feb. 21, 2024) (district court properly rejected $1.24 trillion in statutory damages as proper measure of damages for 124 million affected Facebook users).  In *In re Facebook, Inc. Internet Tracking Litig.*, the Ninth Circuit held that the district court appropriately accepted the $90 million settlement, which was 10% of class counsel's $900 million "best-day-in-court" estimate.[3]  *Id.*  A $90 million settlement divided among 124 million potential class members works out to $0.73 per

---

[3] Plaintiffs are directed to provide a realistic estimate of likely recovery at trial in their motion for final approval of the class action settlement.

United States District Court
Northern District of California

class member.  Here, although $850,000 is only 0.4% of the potential aggregated VPPA statutory damages of $189,575,000, that $850,000 divided among 75,830 class members is $11.20 per class member.  Accordingly, the settlement's monetary relief supports the reasonableness of the settlement at this stage, particularly when weighed against the risks of further litigation.

Further, the proposed monetary relief is in line with other approved settlements in this District.  Plaintiffs point to two other VPPA class action settlements reached in 2025.  *See* Mot. at 16; *Stark v. Patreon, Inc.*, No. 3:22-cv-03131 (N.D. Cal. Jan. 30, 2025) ($0.89 gross per class member); *Ade v. Viki, Inc.*, No. 23-cv-02161-RFL-LB (N.D. Cal. Oct. 27, 2025) ($3.05 gross per class member).

In addition to monetary relief, the Settlement Agreement provides some injunctive relief. As a result of the Settlement Agreement, Defendant implemented a pop-up notification on its desktop website regarding cookies and other tracking technologies, revised the checkbox language on its subscription page such that the box is no longer pre-checked, updated the confirmation language next to the checkbox, and agreed to remain in compliance with the VPPA.  Defendant also states that after this action was filed, it removed the Meta Pixel from its website and has no present plans to reinstall or re-enable the Meta Pixel at this time.

Finally, Plaintiff argues that further litigation would be risky, expensive, complex, and lengthy.  Mot. at 13-16 (discussing specific risks, including challenges for damages and class certification through trial).  Given these risks and the fact that the settlement amount is on par with other VPPA class action settlements, the Court finds that the settlement amount is within the range of possible approval and weighs in favor of granting preliminary approval.

### iv.  Obvious Deficiencies

The Court also considers whether there are obvious deficiencies in the Settlement Agreement.  The Court finds no obvious deficiencies and therefore finds that this factor weighs in favor of preliminary approval.

*        *        *

Having weighed the relevant factors, the Court preliminarily finds that the Settlement Agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.  The Court

12

**DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval. The proposed order should thoroughly address all of the topics set forth in the Northern District's Procedural Guidance for Class Action Settlements.[4] The parties should also review this Court's recent orders granting final approval of class action settlements and draft their proposed order accordingly.[5]

## III.   PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). District courts have "broad power and discretion vested in them by [Rule 23]" in determining the contours of appropriate class notice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

>    (i) the nature of the action;
>    (ii) the definition of the class certified;
>    (iii) the class claims, issues, or defenses;
>    (iv) that a class member may enter an appearance through an attorney if the member so desires;
>    (v) that the court will exclude from the class any member who requests exclusion;
>    (vi) the time and manner for requesting exclusion; and
>    (vii) the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that a third-party Settlement Administrator, Simpluris, Inc., will send the class notice. SA, ¶¶ 35, 59(a)-(e); Hammond Decl., ¶¶ 61-63. Notice containing a link to

---

[4] *See* Procedural Guidance for Class Action Settlements, https://cand.uscourts.gov/rules-forms-fees/northern-district-guidelines/procedural-guidance-class-action-settlements (updated Sept. 5, 2024).

[5] *See, e.g.*, *Stiner v. Brookdale Senior Living, Inc.*, No. 17-CV-03962-HSG, 2025 WL 2998163 (N.D. Cal. Oct. 24, 2025); *Pardi v. Tricida, Inc.*, No. 21-CV-00076-HSG, 2025 WL 2988737 (N.D. Cal. Oct. 23, 2025); *Smith v. Apple, Inc.*, No. 21-CV-09527-HSG, 2025 WL 1266927 (N.D. Cal. May 1, 2025).

United States District Court
Northern District of California

13

an electronic Claim Form will be sent by email, with two reminder notices after the initial notice, as Defendant does not have physical mailing addresses for the proposed Settlement Class. Hammond Decl., ¶ 61. Notice will also be provided on a website to be administered and maintained by the settlement administrator within 14 days from entry of the Preliminary Approval Order. SA, ¶ 59(e). In addition, the Vice President of Client Services at the Settlement Administrator has declared that the administrator will establish and maintain an Interactive Voice Response ("IVR") settlement toll-free telephone number that will be available 24 hours a day and offer answers to frequently asked questions ("FAQs"). Declaration of Bri Nelson ("Nelson Decl."), ¶ 20(b). Class members will be able to submit their claims via an electronic Claim Form. *Id.* ¶ 89. Accordingly, the Court finds that the proposed notice process is "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1047 (quotation omitted).

As to the substance of the notice, the parties have provided a copy of claim forms, *see* Ex. C to Settlement Agreement, Dkt. No. 59-1 at 52-54, and the proposed class notices, *see* Ex. A & B to Settlement Agreement, Dkt. No. 59-1 at 41-51, for all class members. The notices explain the nature of the action and claims, define the class, and inform class members about what payment they will receive and how to opt out of or object to the Settlement Agreement. *See* Dkt. No. 132-9. Additionally, the proposed notices comply with the Northern District of California Procedural Guidance for Class Action Settlements, inform the classes about the allocation of attorneys' fees, costs, and service award, and provide specific information regarding the date, time, and place of the final approval hearing.

To better enable class members to review the anticipated motion for attorneys' fees and the motion for any additional award to Plaintiffs, Class Counsel shall include language in the notices: (1) indicating the deadline for filing the attorneys' fees motion and request for Plaintiffs' award; and (2) informing class members how to access the motion and supporting materials. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair opportunity to examine and object to attorneys' fees motion).

The Court finds that with these changes, the proposed notices provide the best notice practicable under the circumstances and fully comply with due process and Federal Rule of Civil Procedure 23.

## II.   CONCLUSION

The Court **GRANTS** Plaintiff's motion for preliminary approval of class action settlement, Dkt. No. 59.  The Court appoints Simpluris Inc. as the Settlement Administrator, and directs it to comply with the terms of the Settlement Agreement.  The parties are further **DIRECTED** to implement the proposed class notice plan and procedure, described above.  The parties are also **DIRECTED** to submit a stipulation and proposed order tracking the schedule below, filled in with actual dates, within one week of the entry of this order.

| | |
|---|---|
| Defendant to provide Settlement Class list to Settlement Administrator for Notice dissemination | 14 days after Court's entry of Preliminary Approval Order |
| Defendant to provide Notice on a website administered by Settlement Administrator | 14 days after Court's entry of Preliminary Approval Order |
| Notice Date | 30 days after Court's entry of Preliminary Approval Order |
| Motion for Attorneys' Fees, Costs, and Service Award | 35 days before the Objection / Opt-Out Deadline |
| Opposition to Motion for Attorneys' Fees, Costs, and Service Award | No more than 30 days after the Motion for Attorneys' Fees deadline |
| Objection Deadline | 60 days after Notice Date |
| Reply in Support of Motion for Attorneys' Fees, Costs, and Service Award | 14 days after the Opposition to Motion for Attorneys' Fees deadline |
| Opt-Out Deadline | 60 days after Notice Date |
| Claims Submission Deadline | 60 days after Notice Date |
| Motion for Final Approval | January 26, 2027 |
| Reply in Support of Motion for Final Approval and Update Regarding Notice Administration | February 9, 2027 |
| Fairness Hearing | February 25, 2027 |

United States District Court
Northern District of California

| Funding Date | 30 days after Court's entry of Final Approval Order |
|---|---|

Plaintiff's Final Approval Motion is due by January 26, 2027. The Court will hold a Fairness Hearing on February 25, 2027, at 2:00 p.m., in Courtroom 2 on the 4th floor of the Oakland Courthouse, 1301 Clay Street, Oakland, CA 94612.

**IT IS SO ORDERED.**

Dated:  4/22/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California

16