UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HARI KISHORE, et al.,

Plaintiffs,

v.

TIMES INTERNET (UK) LTD.,

Defendant.

Case No. 23-cv-03594-HSG

**ORDER GRANTING MOTION FOR FINAL APPROVAL AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Re: Dkt. Nos. 78, 86

Pending before the Court is the motion for final approval of class action settlement and motion for attorneys' fees, costs, and service awards. Dkt. Nos. 78, 86. The Court held a final fairness hearing on October 22, 2026. For the reasons detailed below, the Court **GRANTS** the motion for final approval and **GRANTS IN PART** and **DENIES IN PART** the motion for attorneys' fees, costs, and service awards.

## I. BACKGROUND

### A. Factual Allegations and Procedural Background

Plaintiffs Hari Kishore and Brett Walker initially filed this putative class action in July 2023. Dkt. No. 1. In their amended complaint, they allege that Defendant Times Internet (UK) Ltd. operates Willow TV, a video-streaming service offering pre-recorded cricket matches to its monthly subscribers. *See* Dkt. No. 10 ("FAC") at ¶¶ 3–5, 8–9, 27. According to Plaintiffs, Defendant disclosed data about its subscribers to third-party Meta Platforms, Inc. without their consent. *See id.* at ¶¶ 3–5, 30–40. Specifically, Plaintiffs allege that Defendant used the Meta Pixel on its website to collect subscriber data—including the titles of the videos that subscribers viewed—for targeted advertising. *See id.* at ¶¶ 15–16, 30–40. And in exchange for allowing Defendant to use the Pixel, Meta in turn retained this subscriber data and linked the information to subscribers' Facebook and Instagram accounts using cookies. *See id.* at ¶¶ 16–25, 34–40. Based

United States District Court
Northern District of California

on these allegations, Plaintiffs brought claims for violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. §§ 2710, *et seq.*, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*. *See id.* at ¶¶ 55–80.

Defendant moved to dismiss the FAC, Dkt. No. 25, and the Court granted the motion in part and denied it in part, Dkt. No. 37. The Court found that Plaintiffs had not established personal jurisdiction over Defendant, but granted Plaintiffs' request for jurisdictional discovery. *See id.* at 5–12. Shortly after, Defendant withdrew its jurisdictional arguments and requested that the Court consider the other arguments in its motion to dismiss. *See* Dkt. Nos. 40, 41. Before the Court could consider the remaining arguments, Defendant withdrew the motion to dismiss pending mediation. *See* Dkt. Nos. 43, 46. The parties ultimately settled and the Court granted the motion for preliminary approval. *See* Dkt. No. 73. The parties now move for final approval of the class action settlement and Plaintiffs move for attorneys' fees, costs, and service awards. *See* Dkt. Nos. 78, 86.

### B. Settlement Agreement

Following mediation with Judge Freda Wolfson (ret.), the parties entered into a settlement agreement. *See* Dkt. No. 59-1, Ex. 1 ("Settlement Agreement" or "SA"). The key terms are as follows:

Class Definition: The Settlement Class is defined as "all persons in the United States who subscribed to Willow TV and watched pre-recorded videos on willow.tv at any time" from July 20, 2021, through September 22, 2023. SA at ¶¶ 13, 36, 40. The Settlement Class is estimated to include 75,830 subscribers. *Id.* at ¶ 43.

Settlement Benefits: Defendant will make an $850,000 non-reversionary payment. SA at ¶¶ 28, 45–46, 67. This payment will include any attorneys' fees, costs, service awards, and Settlement Administrator costs. *See id.* at ¶ 19. Settlement Class Members who wish to receive a payment will be required to submit a Claim Form for approval by the Settlement Administrator.[1]

[1] Plaintiffs have explained that claim forms were necessary here because Defendant uses a third-party payment processor and thus Defendant does not have mailing addresses for any subscribers. *See* Dkt. No. 59-1 at ¶ 3, n.1.

*See id.* at ¶¶ 60, 62–64, 68. Class Members with approved claims shall receive a pro rata portion of the Settlement Fund once attorneys' fees, costs, service awards, and Settlement Administrator costs are deducted. *See id.* at ¶¶ 68–71. Any residual funds remaining after a secondary distribution to Class Members will revert to the *cy pres* recipient, the Electronic Frontier Foundation. *See id.* at ¶ 72; Dkt. No. 72.

Additionally, Defendant removed the Meta Pixel from its website, and has no present plans to reinstall or otherwise reenable the Meta Pixel. SA at ¶ 81. Defendant implemented a pop-up notification on its desktop website regarding cookies and other tracking technologies. *Id.* at ¶ 82. Defendant also revised the language next to the checkbox on its subscription page so that the box is no longer pre-checked, and the accompanying text has been updated to read: "By checking this box and clicking 'REGISTER,' I confirm that I have read and agree to Willow TV's updated Terms of Service and acknowledge the Privacy Policy." *Id.*

<u>Release</u>: Under the Settlement Agreement, Class Members who do not opt out agree to release "all claims that are alleged in the Action, or that could have been pled based on the facts alleged in the Action and that arose during the Class Period," regardless of whether they submit a claim form. *See id.* at ¶¶ 29–30, 50–51. Additionally, Class Members agree to "waive any and all provisions, rights, and benefits conferred by California Civil Code Section 1542 and any statute rule, and legal doctrine similar, comparable, or equivalent to California Civil Code Section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY

*Id.* at ¶¶ 51–53.

<u>Attorneys' Fees and Costs</u>: Class Counsel may apply to the Court for an award of reasonable attorneys' fees not to exceed 33% of the settlement fund (*i.e.*, no more than $280,500) and for reasonable litigation costs and expenses. *See* SA at ¶¶ 54–55.

Service Awards: Class Counsel may apply on behalf of Plaintiffs Kishore and Walker for service awards in an amount not to exceed $7,500. *See* SA at ¶¶ 39, 56–57.

Opt-Out Procedure: Class Members may file timely opt-out requests or objections to the Settlement. *See id.* at ¶¶ 61, 73–80.

## II. FINAL SETTLEMENT APPROVAL

### A. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on April 22, 2026, this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No. 73 at 4–6.

### B. The Settlement

"The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). "This more exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (quotations omitted).

The Ninth Circuit has identified several "subtle signs" the Court should consider in determining whether "class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Id.* at 1043. These include: "(1) when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under

United States District Court
Northern District of California

which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021).

To assess whether a proposed settlement comports with Rule 23(e) and is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

*In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025) (quoting Fed. R. Civ. Proc. 23(e)(2)).[2] In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that Settlement Class Members received adequate notice, and that the proposed settlement is fair, adequate, and reasonable.

**i. Adequacy of Notice**

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. *Id.* Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require

[2] Before 2018, courts applied what were often referred to as the "*Hanlon*" factors, as articulated in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). "The key *Hanlon* factors are now baked into the text of Rule 23(e), and the remaining ones can still be considered for Rule 23(e)(2) analysis." *In re Cal. Pizza Kitchen*, 129 F.4th at 674.

United States District Court
Northern District of California

that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 73 at 13–15; *see also* Dkt. No. 86-2 ("Simpluris Decl.") at ¶¶ 5–14. After the Court preliminarily approved the Settlement Agreement, the Settlement Administrator distributed Notice to Class Members by email. *See* Simpluris Decl. at ¶¶ 8–10. The Settlement Administrator used skip tracing in an effort to identify valid email addresses for some Class Members. The Settlement Administrator ultimately emailed notice to 73,674 of the 75,198 Class Members. *Id.* at ¶¶ 9–10. The email notices were returned as undeliverable for 743 Class Members. *Id.* at ¶ 10. Accordingly, 72,931 of the 75,198 Class Members received notice. *Id.* The Settlement Administrator ultimately sent three separate reminder emails to those who had not submitted a Claim Form or an Opt Out. *See id.* at ¶¶ 11–13.

Notice was posted on the settlement website. *Id.* at ¶ 15. In addition, the Settlement Administrator maintained a case-specific, toll-free telephone number and email address to address potential Class Members' inquiries. *See id.* at ¶¶ 15–17. According to the Settlement Administrator, 1,717 Class Members submitted valid claims.[3] *See id.* at ¶ 18. No Class Members filed an objection, and only three Class Members opted out. *Id.* at ¶¶ 19–22; Dkt. No. 86-1 ("Brandler Decl.") at ¶ 6. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to Class Members.[4]

**ii. Fairness, Adequacy, and Reasonableness**

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

In evaluating the motion for preliminary approval, the Court considered all three signs of

---

[3] Only two Claim Forms were determined to be invalid. *See* Simpluris Decl. at ¶ 18. One was a duplicate submission, and the other was submitted by someone who was not a Settlement Class Member. *Id.*

[4] The Settlement Administrator also provided notice of the proposed Settlement pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1712(b), to the United States Attorney General and the Attorneys General of each state. *See* Simpluris Dec. at ¶ 5.

collusion that the Ninth Circuit has identified. *See* Dkt. No. 73 at 8–11; *see also McKinney-Drobnis*, 16 F.4th at 607–08. Nothing in the record changes the Court's preliminary conclusion regarding these factors. The proposed settlement is non-reversionary; notwithstanding any clear sailing provision regarding counsel's request for attorneys' fees, the majority of the monetary settlement will be distributed to Class Members; and the Court still carefully scrutinizes the request for attorneys' fees and service awards to ensure Class Members' interests are protected under the settlement. *See* Section III below. The Court further finds that the other factors discussed in Rule 23(e) indicate that the proposed settlement is fair, adequate, and reasonable.

**a. Adequacy of Representation**

First, the Court must consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. Proc. 23(e)(2)(A). The Court previously found that Plaintiffs and Class Counsel have prosecuted the action vigorously and that there is no evidence that either have a conflict with other Class Members. Dkt. No. 73 at 6. Nothing in the record here changes that conclusion. In addition, while this case was at a relatively early stage, the Court is persuaded that Class Counsel "had sufficient information to make an informed decision" about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000); Dkt. No. 86 at 12 (discussing investigation and informal discovery prior to settlement). Accordingly, this factor weighs in favor of approval.

**b. Arm's Length Negotiation**

Next, the Court must consider whether the Settlement Agreement was negotiated at arm's length. Fed. R. Civ. Proc. 23(e)(2)(B). This agreement was facilitated through arm's-length discussions overseen by a neutral mediator, thereby reducing the likelihood of fraud or collusion. *See Estorga v. Santa Clara Valley Transp. Auth.*, No. 16-CV-02668-BLF, 2020 WL 7319356, at *6 (N.D. Cal. Dec. 11, 2020). The Court's findings about other subtle signs of collusion also support the conclusion that this agreement was negotiated at arm's length. Accordingly, this factor also weighs in favor of approval.

**c. Adequacy of Relief**

Next, the Court must consider whether "the relief provided for the class is adequate, taking

into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. Proc. 23(e)(2)(C).

First, the Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the substantial risk that Plaintiffs would face in litigating the case given the nature of the asserted claims. Difficulties and risks in litigation weigh in favor of approving a class settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-CV-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotation omitted).

Were this case to proceed, Plaintiffs anticipate significant risks to recovery. *See* Dkt. No. 86 at 8–11. The Court did not rule on the substantive arguments that Defendant raised in its motion to dismiss. *See id.* at 8; *see also* Dkt. No. 25. Defendant disputed foundational issues that could have undermined Plaintiffs' entire theory, such as whether the information allegedly transmitted through the Meta Pixel constituted personally identifiable information within the meaning of the VPPA; whether Defendant knowingly disclosed any information; and whether subscribers consented to the alleged disclosures. *See id.*

Plaintiffs likewise anticipate that certifying a class and maintaining class status through trial would present substantial obstacles. *See* Dkt. No. 86 at 10. And as the Court previously pointed out, even assuming Plaintiffs prevailed on their VPPA claims as to all Class Members, the Court may have considered the $190 million in statutory damages "obviously unreasonable in relation to the goals of the statute and the conduct the statute prohibits." *Wakefield v. ViSalus, Inc.*, 51 F. 4th 1109, 1120–23 (9th Cir. 2022) (finding "aggregated statutory damages" are subject to constitutional due process limits "when they are 'wholly disproportioned' and 'obviously unreasonable' in relation to the goals of the statute and the conduct the statute prohibits"); *see also*



United States District Court
Northern District of California

United States District Court
Northern District of California

*In re Facebook, Inc. Internet Tracking Litig.*, No. 22-16903, 2024 WL 700985, at *1 (9th Cir. Feb. 21, 2024) (finding district court properly rejected $1.24 trillion in statutory damages as proper measure of damages for 124 million affected Facebook users).

The Court also previously concluded that the settlement amount is within the range of possible approval, *see* Dkt. No. 73 at 11–12, and its opinion has not changed. Counsel estimates that $20 is "a reasonable benchmark for the value customers place on the privacy of their video viewing habits on WillowTV." *See* Dkt. No. 86 at 10. They thus suggest that a reasonable estimate of Defendant's *realistic* exposure would be closer to $1.5 million. *Id.* The $850,000 settlement therefore represents approximately 56% of this more realistic exposure. Moreover, Counsel represents that the per-Class Member recovery here is approximately $11.30 gross and the per claimant recovery is approximately $292.45. *See* Dkt. No. 86 at 11. This is a significant recovery, especially in light of the risks and costs of ongoing litigation.

Second, the Court finds that the claims process was effective. As of September 21, 2026, approximately two months after the response deadline, 1,717 valid claims have been submitted. *See* Simpluris Decl. at ¶ 18. This represents a claims rate of approximately 2.28%. *Id.* This is generally consistent with what the parties anticipated at the preliminary approval stage, and the rate does not appear to be the result of deficient notice. Direct notice reached all but a few hundred Class Members, Class Members received three reminder notices concerning the claims process, and the claims process itself was straightforward and not unduly burdensome. *See id.* at ¶¶ 10–13. The form was a single page, requesting basic contact information, a method of receiving payment, and a signature. *See* Dkt. No. 59-1, Ex. C.

Third, while the Court addresses Plaintiffs' above-benchmark attorneys' fees request below, the Court does not find that their request renders the settlement amount otherwise inadequate. Accordingly, the Court finds that this factor also favors approval.

**d. Equitable Treatment of Class Members**

Finally, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. Proc. 23(e)(2)(D). This factor ensures that an agreement does not "improperly grant[] preferential treatment to class representatives or segments of the class."

*Perks v. Activehours, Inc.*, No. 5:19-CV-05543-BLF, 2021 WL 1146038, at *6 (N.D. Cal. Mar. 25, 2021) (quotation omitted). Here, all Class Members are entitled to the same relief, and the payments will be evenly distributed on a pro rata basis. Class Members are thus inherently treated equally under this distribution scheme. *Id.* As noted below, the Court also has significantly reduced the amount of the service awards for Plaintiffs Kishore and Walker such that they are not receiving a disproportionate amount relative to other Class Members.

**e. Reaction of Class Members**

While not one of the explicit Rule 23(e) factors, the reaction of the class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citations omitted); *see also In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

As discussed above, the settlement terms were publicized through a notice process that the Court has deemed adequate. Out of more than 75,000 class members, only three requested exclusion from the settlement, and no class member objected. *See* Simpluris Decl. at ¶¶ 19–22. The Court finds that the positive reaction of the settlement class supports approval of the settlement.

* * *

After considering the above factors, the Court finds that the Settlement Agreement is fair, adequate, and reasonable, and that the Settlement Class Members received adequate notice. Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**. Dkt. No. 86.

## III. MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

In their unopposed motion and consistent with the Settlement Agreement, Class Counsel ask the Court to approve an award of $255,000 in attorneys' fees and $35,408.53 in costs. Dkt. No. 78 at 5–11. They also seek $7,5000 service awards for Plaintiffs Kishore and Walker. *Id.* at



United States District Court
Northern District of California

11–12.

### A. Legal Standard

Class counsel is entitled to an award of reasonable attorneys' fees and reimbursement of litigation expenses from the common fund they created for the benefit of a class. *See* Fed. R. Civ. P. 23(h); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). The purpose of the "common fund" doctrine is to avoid unjust enrichment by requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). The district court has discretion over the amount of attorney fees to award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). The "touchstone" for the Court's reasonableness analysis is "the benefit to the class—class counsel can only reap rewards if they have delivered results for class members." *In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th at 679 (quotation omitted). The Court must independently calculate the benefit to the class, and may not approve fees "that appear excessive of settlement value." *Id.*

Under California law, the "percentage of fund method" is proper to determine reasonable attorneys' fees in class actions. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016). In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage fee." *Id.* at 506. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. Class Counsel are also entitled to recover "nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h).

### B. Attorneys' Fees

Using federal law for guidance, 25% of the common fund is the benchmark for attorneys' fee awards. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). The Court considers the reasonableness of the percentage requested in light of the factors enumerated by the Ninth Circuit, with the 25%

award as a starting point. The Ninth Circuit has identified several factors that a court should consider to determine whether to adjust a fee award from the benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50. The Court is cognizant of its obligation to review class fee awards with particular rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Id.* at 1052 (quotation omitted). Here, the Court finds under the circumstances that the record warrants the requested award of 30% of the fund.

The first and most critical factor in assessing an attorneys' fee request is "the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). As discussed, Class Counsel obtained a significant recovery for the class by securing an $850,000 non-reversionary settlement fund. The gross recovery per Class Member is $11.30, and those Class Members who submitted claims stand to receive over $290 each. *See* Dkt. No. 78 at 6. This is considerably higher than other recent VPPA class action settlements in this district. *See, e.g.*, *Ade-Fosudo v. Viki, Inc.*, No. 3:23-cv-02161-RFL-LB (N.D. Cal. Oct. 27, 2025) (approximately $3.20 gross per class member and $200 per claimant); *Stark v. Patreon, Inc.*, No. 22-cv-03131-JCS, 2025 WL 1592736, at *10 (N.D. Cal. June 5, 2025) (approximately $0.84 gross per class member and $42 per claimant). In addition to monetary relief, Defendant has removed the Meta Pixel from its website and has agreed not to operate the Meta Pixel except in compliance with the VPPA. *See* SA at ¶¶ 81–82. And Defendant has agreed to implement a pop-up notification on its desktop website regarding cookies and other tracking technologies. *Id.* The Court agrees that this is a good result that confers benefits on the Class. The fact that no Class Members have objected and only three Class Members opted out buttresses this conclusion.

The other factors support counsel's requested fee here too. Class Counsel argue that they would have faced considerable difficulty obtaining a similar recovery through litigation given the complexity and risks of this litigation. *See* Dkt. No. 78 at 6–7. The Court also agrees that Counsel litigated this case skillfully and professionally. And the risk that counsel took in litigating this case on a contingency fee basis and advancing costs weighs in favor of at least a benchmark fee award. *See Vizcaino*, 290 F.3d at 1050. Although these factors are often present, when coupled with the results achieved, the Court finds that an above-benchmark fee is warranted. The lodestar cross-check further supports this higher fee. Counsel expended over 450 hours just through June 2026, for a lodestar of $383,084. *See* Dkt. No. 78-1 at ¶ 27. Having reviewed the proffered billing records and summaries of time, the Court finds that counsel worked efficiently to settle this case.[5]

The Court finds that an award of 30% of the settlement fund—or $255,000—is reasonable based on the specific circumstances here and **GRANTS** Plaintiffs' requested fees.

### C. Litigation Costs

Class Counsel represent that they have incurred $35,408.53 in costs. *See* Dkt No. 78 at 11. The Settlement Agreement authorizes reimbursement for such costs. *See* SA at ¶¶ 54–55. The Court finds that the requested expenses are reasonable and **GRANTS** Plaintiffs' request.

### D. Service Awards

Lastly, Class Counsel request service awards of $7,500 each for Plaintiffs Kishore and Walker. *See* Dkt. No. 78 at 11–12. While awards are discretionary, "[i]t is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) (quotation omitted). Service awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a

[5] The Court also appreciates Counsel's attention to detail in preparing their materials. The summary tables of the work performed at each stage of the litigation and their proposed order, modeled after the Court's prior orders, were especially useful.

United States District Court
Northern District of California

private attorney general." *Rodriguez*, 563 F.3d at 958–59. To evaluate the reasonableness of a proposed service award, courts look to factors such as the representative's service to the class, investment of time, and reputational harm. *See Staton*, 327 F.3d at 977. Another important consideration is the proportionality between the incentive award and the range of class members' settlement awards. *See, e.g.*, *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013) (declining to award a $10,000 incentive award where that was nearly three times the largest amount paid to any class member).

Here, the Court finds that Plaintiffs' requested service awards are unreasonable. Plaintiffs argue broadly that they remained closely involved in and informed about the case over the last three years, including by providing counsel with information about their experiences with Willow TV, reviewing the pleadings, and approving the Settlement Agreement. *See* Dkt. No. 78 at 12; *see also* Dkt. No. 78-3 ("Walker Decl."); Dkt. No. 78-4 ("Kishore Decl."). Counsel also states that Plaintiffs "agreed to place their names in publicly filed court records and expose themselves to the obligations and potential burdens associated with serving as class representatives." Dkt. No. 78 at 12. However, given the relatively early stage of the case, Plaintiffs were not deposed and did not attend either mediation session. *See generally* Walker Decl.; Kishore Decl. Moreover, Counsel has estimated that given the number of Class Members who have submitted forms, the maximum recovery is approximately $292.45. *See* Dkt. No. 86 at 11. The proposed $7,500 award is over 25 times that amount.

The Court does not minimize Plaintiffs' role in enabling a favorable result for their fellow Class Members, but considering all the circumstances of this case, the Court finds that such an outsized award is unwarranted. The Court accordingly finds that a $1,000 service award each is reasonable to compensate Plaintiffs for their efforts.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement, Dkt. No. 86, and **GRANTS IN PART** and **DENIES IN PART** the motion for attorneys' fees, costs, and service awards, Dkt. No. 78. The Court awards attorneys' fees in the amount of $255,000; costs in the amount of $35,408.53; and service awards of $1,000 each for Plaintiffs

Kishore and Walker.

The parties and settlement administrator are directed to implement this Final Order and the Settlement Agreement in accordance with the terms of the Settlement Agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within seven days from the date of this order. The judgment need not, and should not, repeat the analysis in this Order.

Class counsel shall file a Post-Distribution Accounting within 21 days after the settlement checks become stale (or, if no checks are issued, all funds have been paid to class members, *cy pres* beneficiaries, and others pursuant to the Settlement Agreement). In addition to the information contained in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, the Post-Distribution Accounting shall discuss any significant or recurring concerns communicated by class members to the settlement administrator or counsel since final approval, any other issues in settlement administration since final approval, and how any concerns or issues were resolved. Counsel are directed to summarize this information in an easy-to-read chart that allows for quick comparisons with other cases. The parties shall post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website. The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.

The Court will withhold 10% of the attorney's fees granted in this Order until the Post-Distribution Accounting has been filed. Class Counsel shall file a proposed order releasing the remainder of the fees when they file their Post-Distribution Accounting.

**IT IS SO ORDERED.**

Dated: 10/28/2026

Haywood S. Gill Jr.

HAYWOOD S. GILLIAM, JR.
United States District Judge